UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


| LORITA M. SAVOIE | CIVIL ACTION |
|---|---|
| VERSUS | NO: 15-1220 |
| PENNSYLVANIA GENERAL INSURANCE CO., ET AL | SECTION: J(3) |

## ORDER AND REASONS

This matter is on remand from the United States Court of Appeals for the Fifth Circuit, which vacated this Court's previous Order and Reasons granting a *Motion to Remand* **(Rec. Doc. 23)** filed by Plaintiffs, Lorita Savoie, et al. ("Plaintiffs"). *See Savoie v. Huntington Ingalls, Inc.*, 817 F.3d 457, 463, 466 (5th Cir.), *cert. denied,* 137 S. Ct. 339, 196 L. Ed. 2d 262 (2016). In accordance with the Fifth Circuit's directive, this Court now takes up Plaintiffs' *Motion to Remand* **(Rec. Doc. 23)** to determine whether Defendants can demonstrate the existence of a colorable federal defense. Both parties have filed supplemental memoranda on the issue. (Rec. Docs. 137 and 138.) Having considered the motion, the parties' submissions, the record, and the applicable law, the Court finds, for the reasons expressed below, that the motion should be **DENIED**.

1

## PROCEDURAL HISTORY AND BACKGROUND FACTS

This matter arises from claims originally filed by Joseph Savoie ("Decedent"), who had contracted mesothelioma, a cancer of the lining of the lung, which is caused by exposure to asbestos. Decedent originally filed this lawsuit in the Civil District Court for the Parish of Orleans, State of Louisiana in August 2014. In his original petition for damages, Decedent alleged that he was exposed to asbestos during the period in which he was employed by Huntington Ingalls, Inc. ("Avondale")[1] in various positions from approximately 1948 through 1996. Decedent specifically asserts that he was exposed to asbestos on a daily basis, both at the job-site and while he was traveling to and from work with other Avondale employees who carried asbestos on their clothing and persons. In his petition, Decedent included a substantial number of state law causes of action, including but not limited to: failure to warn employees of the dangers associated with asbestos, failure to provide a safe working environment, and strict liability as custodians of the asbestos. (Rec. Doc. 1-1 at 5-6.) Subsequent to filing this lawsuit, Decedent died as a result of his mesothelioma. Plaintiffs, Decedent's surviving wife and children,

---

[1] Defendant Huntington Ingalls, Inc. has a long history of different titles including Northrop Grumman Shipbuilding Inc., Northrop Grumman Ship Systems, Inc., Avondale Industries, Inc., Avondale Shipyards, Inc., and Avondale Marine Ways, Inc. (Rec. Doc. 1-1, p. 2). For purposes of simplicity, the Court will refer to this Defendant simply as "Avondale."

then filed an amended petition for damages, joining the lawsuit, and seeking survival and wrongful death damages pursuant to Louisiana law.

Defendants removed the lawsuit to this Court on April 16, 2015, asserting that this Court has subject matter jurisdiction over the matter pursuant to the Federal Officer Removal Statute, 28 U.S.C. § 1442. Plaintiffs then filed a motion to remand, arguing that the Federal Officer Removal Statute does not provide a basis for federal jurisdiction. This Court granted Plaintiffs' motion to remand, finding that Defendants failed to establish that this Court has jurisdiction over Plaintiffs' failure to warn and strict liability claims. Specifically, this Court held that Defendants did not demonstrate that Avondale acted under the direction of a federal officer or that a causal nexus existed between Plaintiffs' claims and Avondale's actions. (Rec. Doc. 30 at 15, 17.)

Defendants appealed to the United States Court of Appeals for the Fifth Circuit. The Fifth Circuit affirmed this Court's order regarding Plaintiffs' failure to warn and negligence claims, but reversed this Court's conclusion regarding Plaintiff's strict liability claims. *Savoie v. Huntington Ingalls, Inc.*, 817 F.3d 457, 463, 466 (5th Cir.), *cert. denied,* 137 S. Ct. 339, 196 L. Ed. 2d 262 (2016). The Fifth Circuit found that a causal nexus exists between Plaintiffs' strict liability claims and Avondale's actions

under color of federal authority.  *Id.* at 465-66.  The case was then remanded to this Court to determine whether Avondale possesses a colorable federal defense.

Following the Fifth Circuit's ruling, this Court held a telephone conference during which it ordered Avondale to produce certain government contracts upon which it bases its government contractor defense.  (*See* Rec. Doc. 47.)  After Avondale produced this information, the Court allowed both parties to submit supplemental briefing on whether Avondale possesses a colorable federal defense.  That issue is now before the Court.

## PARTIES' ARGUMENTS

Plaintiffs argue that Defendants failed to make a colorable showing of a federal defense in both their notice of removal and their original opposition to remand.  They argue that Defendants should be precluded from providing any supplemental evidence at this point because the Fifth Circuit's opinion did not indicate that further briefing was necessary.  Plaintiffs also argue that Defendants have not demonstrated a colorable federal defense even if supplemental evidence is considered.  For instance, Plaintiffs argue that Defendants fail to make a colorable showing that Avondale was required by the federal government to use asbestos because any such requirement would also have mandated that Avondale satisfy safety requirements which Plaintiffs argue Avondale failed

to do.   Furthermore, Plaintiffs argue that Defendants have not demonstrated that Avondale conformed to government specifications regarding safety.   Finally, Plaintiffs argue that Defendants have not established that the government had more knowledge about the hazards of asbestos than Avondale.

In opposition, Defendants first argue that they should be permitted to provide supplementary evidence because 28 U.S.C. § 1653 is to be broadly construed.   Defendants also argue that removal is proper because they have demonstrated all necessary elements of a colorable federal defense.

## **LEGAL STANDARD**

A defendant may remove a civil action filed in state court if a federal court would have had original jurisdiction over the action.   *See* 28 U.S.C. § 1441(a).   The removing party bears the burden of proving by a preponderance of the evidence that federal jurisdiction exists at the time of removal.   *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995).   The jurisdictional facts supporting removal are examined as of the time of removal. *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000). Ambiguities are construed against removal and in favor of remand, because removal statutes are to be strictly construed.   *Manguno v. Prudential Prop. & Cas. Ins.*, 276 F.3d 720, 723 (5th Cir. 2002).

Federal courts have original jurisdiction over cases which pose a "federal question," by "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C.A. § 1331 (1980). Courts consider whether a case poses a federal question pursuant to the "well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987) (citing *Gully v. First Nat'l Bank*, 299 U.S. 109, 112-113 (1936)).

## DISCUSSION

### I. Amendment of the Pleadings

The first question for the Court is whether Defendants should be granted leave to supplement the record with evidence regarding the existence of a colorable federal defense. Defendants' notice of removal states that the Court has subject matter jurisdiction pursuant to the Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1), which is discussed in greater detail below. The notice of removal includes an averment that Defendants can raise a government contractor defense. However, neither the notice of removal nor the opposition to Plaintiffs' motion to remand contain certain evidentiary material addressing the test in *Boyle v. United Technologies*, 487 U.S. 500 (1988). Defendants now wish to

supplement the record in order to demonstrate the existence of a colorable government defense.

Defendants have not filed a motion to amend their removal notice; rather, they informed the Court during a telephone conference on June 22, 2016 of their intention to supplement the record with (1) contracts between the federal government and Avondale (2) an affidavit of Dr. Richard Lemen, a retired Assistant Surgeon General of the United States, and (3) an affidavit from Mr. Thomas McCaffery.[2] (*See* Rec. Doc. 47.) Defendants first apprised the Court of their intention to supplement the record after the Fifth Circuit remanded the case back to this Court. At that point, Defendants filed a motion to set a status conference to discuss multiple issues, one of which was its intention "to file a motion to amend or supplement the pleadings and/or the evidence pursuant to 28 U.S.C. § 1653 in order to establish jurisdictional facts." (Rec. Doc. 44 at 2.) The Court granted the motion and held a telephone conference on June 22, 2016. During the telephone conference, the Court ordered Defendants to produce the government contracts and the affidavits of Dr. Lemen and Mr. McCaffery.[3] After discovery related to these

---

[2] Defendants included a different affidavit from McCaffery in their initial opposition to the motion to remand. (Rec. Doc. 25-5.) Thus, they are requesting to supplement the record with a second affidavit from McCaffery.

[3] During the telephone conference, the Court also ordered Defendants to participate in a 30(b)(6) deposition. However, after a drawn out dispute between the parties that played out before the Magistrate Judge, this Court

jurisdictional issues was complete, the Court ordered the parties to provide supplemental briefing regarding whether Defendants have made a colorable showing of a government contractor defense. Plaintiffs argue that the Court should deny Defendants' request to supplement their removal notice with evidence supporting the existence of a government contractor defense. Defendants, however, urge the Court to broadly construe section 1653 to avoid remand on purely technical grounds.

The removing party is free to amend a notice of removal within the thirty day period for filing the notice set out in 28 U.S.C. § 1446(b). *See Wilson v. Int'l Bus. Machines Corp.*, No. 3:11-CV-0944-G, 2011 WL 4572019, at *1 (N.D. Tex. Oct. 3, 2011). After the expiration of this thirty day period, the removing party must rely on 28 U.S.C. § 1653 to make such an amendment. Section 1653 provides that "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." *See Wood v. Crane Co.*, 764 F.3d 316, 322-23 (4th Cir. 2014) (discussing the different standards for amendments based on whether they are made within the thirty day window); 14C Charles Alan Wright, Et Al., Fed. Prac. & Proc. Juris. § 3733 (4th ed.) (noting that after the thirty day period elapses, "defendants may amend the notice only

---

determined that the documents provided to Plaintiffs were sufficient and did not require Defendants to participate in the 30(b)(6) deposition. (*See* Rec. Doc. 108).

to set out more specifically the grounds for removal that already have been stated, albeit imperfectly, in the original notice"). Because Defendants intend to supplement their notice of removal long after the thirty day window has closed, they must satisfy the requirements of section 1653.

Section 1653 was originally intended to allow parties to cure deficient allegations of diversity jurisdiction, but its role was expanded in 1948 to include all jurisdictional allegations. *Mobil Oil Corp. v. Kelley*, 493 F.2d 784, 788 (5th Cir. 1974). Still, it is primarily used today in cases where diversity of citizenship forms the basis for jurisdiction. *See, e.g., Swindol v. Aurora Flight Scis. Corp.*, 805 F.3d 516, 518 (5th Cir. 2015); *see also Cent. W. Virginia Reg'l Airport Auth., Inc. v. Triad Eng'g, Inc.*, No. 2:15-CV-11818, 2016 WL 661587, at *3 (S.D.W. Va. Feb. 18, 2016) ("Probably the most frequent amendment allowed under § 1653 is a change to an assertion regarding a party's citizenship for diversity purposes[.]") Indeed, nearly all cases cited by Defendants in support of supplementing the record involve cases where jurisdiction was based upon complete diversity. (*See* Rec. Doc. 137 at 10.) Because jurisdiction here is not based upon diversity, the analysis for whether to permit amendment under section 1653 is more complicated.

Whether the district court has the power to authorize amendments under section 1653 "turns on the nature of the jurisdictional defect." *Whitmire v. Victus Ltd.*, 212 F.3d 885, 887 (5th Cir. 2000). The Fifth Circuit has stated that section 1653 should "be broadly construed to avoid dismissals on purely 'technical' or 'formal' grounds." *Id*. Amendments filed after removal are generally not to be used to cure jurisdictional defects. *Camsoft Data Sys., Inc. v. S. Elecs. Supply, Inc.*, 756 F.3d 327, 337 (5th Cir. 2014). Jurisdiction must exist at the time the original complaint was removed and section 1653 is not meant to cure defective jurisdictional allegations. *Id.* "While a district court can 'remedy inadequate jurisdictional allegations,' it cannot remedy 'defective jurisdictional facts.'" *Whitmire*, 212 F.3d at 887 (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 n.5 (1989)). As the Fourth Circuit has recognized, "[t]he trick lies in placing a case within one of those two categories." *Wood*, 764 F.3d at 323.

The Supreme Court has addressed a scenario where defendants relied on supplemental material to support the existence of jurisdiction under the Federal Officer Removal Statute. *Willingham v. Morgan*, 395 U.S. 402, 407 n.3 (1969). In *Willingham v. Morgan*, the Court analyzed whether the defendants had adequately demonstrated that the Federal Officer Removal Statute applied when

the only facts in the record were first presented in affidavits filed in support of the defendants' motion for summary judgment. *Id.* at 407. The Court noted:

> This material should have appeared in the petition for removal. However, for purposes of this review it is proper to treat the removal petition as if it had been amended to include the relevant information contained in the later-filed affidavits. See 28 U.S.C. s 1653.

*Id.* at 407 n.3. The Court ultimately permitted the affidavits to be considered part of the record.

Cases from other circuits confirm that Defendants' request to supplement the record is appropriate under section 1653. For instance, the Third Circuit has stated that, taken together with 28 U.S.C. § 1446(a), section 1653 permits "a court to consider jurisdictional facts contained in later-filed affidavits as amendments to the removal petition where . . . those facts merely clarify (or correct technical deficiencies in) the allegations already contained in the original notice." *USX Corp. v. Adriatic Ins. Co.*, 345 F.3d 190, 205 n.12 (3d Cir. 2003). The Ninth Circuit has also held that a district court did not err when it construed a defendant's opposition to a motion to remand as an amendment pursuant to section 1653. *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 n.1 (9th Cir. 2002); *see also Ruppel v. CBS Corp.*, 701 F.3d 1176, 1185 (7th Cir. 2012) (noting that the defendant "could also have amended its notice of removal and added supporting exhibits

under 28 U.S.C. § 1653"); *Morgan v. Bill Vann Co.*, No. CIV.A. 11-0535-WS-B, 2011 WL 6056083, at *4 (S.D. Ala. Dec. 6, 2011) ("[F]ederal courts have routinely allowed defendants removing on the basis of federal officer jurisdiction either to make an evidentiary showing post-removal or to rely on factual allegations in the notice of removal untethered to specific evidentiary proof.")  Indeed, a court in this district has recently applied similar logic, finding that the defendants could provide greater detail in an opposition to a motion to remand than was originally present in the notice of removal. *Bd. of Comm'rs of the Se. Louisiana Flood Prot. Auth.-E. v. Tennessee Gas Pipeline Co., LLC*, 29 F. Supp. 3d 808, 848-49 (E.D. La. 2014).  Because the notice of removal in this case articulates the grounds for jurisdiction, Defendants should be permitted to utilize section 1653 to include greater detail. *See Wood*, 764 F.3d at 326 (refusing to permit defendants to utilize section 1653 to add a ground for removal that was not asserted in the notice of removal); *Cent. W. Virginia Reg'l Airport Auth., Inc. v. Triad Eng'g, Inc.*, No. 2:15-CV-11818, 2016 WL 661587, at *8 (S.D.W. Va. Feb. 18, 2016) (declining to permit section 1653 amendment to add federal officer removal theory as a basis for jurisdiction when it was not present in the notice of removal); *but See Buchner v. F.D.I.C.*, 981 F.2d 816, 818 (5th Cir. 1993) ("The fact that the FDIC waived its right to remove the

instant case is irrelevant to the determination of whether the case should have or could have been remanded once it had been properly removed by another party who had not waived the right to remove.")  The Court is satisfied that documents which clarify allegations already made in the notice of removal may be used to supplement the record pursuant to section 1653.

## II.  **Federal Officer Removal Statute**

The Federal Officer Removal Statute permits the removal of any civil or criminal action brought in state court when the defendant in the matter is:

> The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1). The Fifth Circuit has explained that removal pursuant to this statute is meant to "ensure a federal forum in any case where a federal officer is entitled to raise a defense arising out of his official duties." *Winters v. Diamond Shamrock Chemical Co.,* 149 F.3d 387, 398 (5th Cir. 1998). It is the removing defendants that have the burden of establishing the existence of federal jurisdiction. *Id.* at 397. While courts are obligated to broadly construe removal jurisdiction under the

Federal Officer Removal Statute, this "does not mean that the statute's broad language should be interpreted to imply limitless application." *Cole v. Northrop Grumman Ship Sys., Inc.*, No. 07-3049, 2008 WL 2651428, at *2 (E.D. La. July 7, 2008) (Fallon, J.) (citing *Watson v. Phillip Morris Cos., Inc.*, 551 U.S. 142, 142, 127 S.Ct. 2301 (2007)).

In *Mesa v. California,* the Supreme Court established the test for removal pursuant to the Federal Officer Removal Statute. 489 U.S. 121, 131-32, 109 S.Ct. 959 (1989). According to *Mesa*, removal is mandated pursuant to the statute upon proof by the defendants seeking removal: (1) that they are "persons" under § 1442(a)(1); (2) that they acted under the direction of a federal officer; (3) that they have demonstrated a causal nexus between plaintiff's claims and defendants' actions performed under the color of a federal office; and (4) that they can raise a federal defense to plaintiff's claims. *Mesa*, 489 U.S. at 131-32, 109 S.Ct. 959; *Winters*, 149 F.3d at 398. Plaintiffs do not dispute that Defendants are considered "persons" for purposes of the Federal Officer Removal Statute. Thus, the first prong is not at issue. Additionally, the Fifth Circuit held that Avondale was acting under the direction of a federal officer and that it has demonstrated a causal nexus on Plaintiffs' strict liability claims. Accordingly, the second and third prongs are also satisfied. The only remaining

question is whether the Defendants have a colorable federal defense on Plaintiffs' strict liability claims.

Although Defendants initially claimed multiple colorable federal defenses,[4] the only federal defense argued here is the government contractor defense described in *Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988). "That defense provides immunity to contractors for conduct that complies with the specifications of a federal contract." *Crutchfield v. Sewerage & Water Bd. of New Orleans*, 829 F.3d 370, 375 (5th Cir. 2016). Immunity under the government contractor defense attaches if the defendant can establish that "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *In re Katrina Canal Breaches Litig.*, 620 F.3d 455, 460 (5th Cir. 2010) (citing *Boyle*, 487 U.S. at 512); *Wilde v. Huntington Ingalls, Inc.*, 616 F. App'x 710, 715 (5th Cir. 2015).

To establish jurisdiction under section 1442, the removing party only needs to present a colorable defense. *Jefferson Cty., Ala. v. Acker*, 527 U.S. 423, 431 (1999). The defendant is not

---

[4] Defendants initially argued that Plaintiffs' survival action was preempted by the LHWCA and that Plaintiffs' wrongful death claims were barred by the LHWCA. (Rec. Doc. 25 at 23-29.)

required "to win his case before he can have it removed." *Id.* (internal citation omitted). Likewise, the federal defense does not need to be "clearly sustainable" to satisfy the removal standard. *Zeringue v. Crane Co.*, 846 F.3d 785, 789 (5th Cir. 2017) (quoting *Jefferson City*, 527 U.S. at 432). The Supreme Court has not defined "colorable" in the context of section 1442, but has provided clarity about what constitutes a non-colorable federal defense. *Id.* at 790. A non-colorable federal defense is one that is "immaterial and made solely for the purpose of obtaining jurisdiction or that is wholly insubstantial and frivolous." *Id.* (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 n.10 (2006)). Thus, a federal contractor defense is adequate for jurisdictional purposes when the removing party's entitlement to it "is subject to reasonable debate." *Crutchfield*, 829 F.3d at 375.

## A. The First Two *Boyle* Elements

To satisfy the first two *Boyle* elements, the removing party must make a colorable showing that the United States approved reasonably precise specifications requiring the use of asbestos-containing products and that Avondale conformed to those specifications. *Boyle*, 487 U.S. at 512. As to the first requirement, "[t]he 'reasonably precise' standard is satisfied as long as the specifications address, in reasonable detail, the product design feature, alleged to be defective." *Kerstetter v.*

16

*Pac. Sci. Co.*, 210 F.3d 431, 438 (5th Cir. 2000).  The second
requirement is satisfied when the removing party demonstrates that
it has complied with the government's specifications.  Together,
the first two *Boyle* requirements "assure that the government, and
not the contractor, is exercising discretion in selecting the
design." *Stout v. Borg-Warner Corp.*, 933 F.2d 331, 334 (5th Cir.
1991).

Defendants have submitted the affidavits of three people to
make a colorable showing on these two elements.  The first affiant
is Thomas McCaffery (Rec. Doc. 25-5), a maritime historian with
experience researching archival naval policies and procedures.  An
affidavit from McCaffery states that between 1952 and 1976, eighty-
three percent of the ocean-going ships built at Avondale were built
for either the Navy, the Coast Guard, the United States Maritime
Administration, or the United States Army.  (Rec. Doc. 25-5 at 1.)
It further states that contracts for the construction of United
States government vessels required specifications prepared by
these government agencies.  *Id*. at 5.  These specifications
provided the mandatory terms that the Unites States imposed upon
Avondale, and they required products that contained asbestos.  *Id*.
at 6.

Defendants also submitted an affidavit from Edward Blanchard.
(Rec. Doc. 25-6.)  Blanchard's affidavit states that he was

employed at Avondale from 1942 until 1988, and had worked closely with federal government inspectors on the construction of military vessels since 1950. (Rec. Doc. 25-6 at 1-2.) It states that federal inspectors closely supervised the construction of the vessels, overseeing all aspects of the shipbuilding process. *Id.* at 4. Each step of the process was inspected by federal inspectors who could stop work at any time if it failed to meet their specifications. *Id.* at 6. Overall, Blanchard's affidavit creates an image of a shipbuilding process closely monitored by the federal government.

Defendants have also included an affidavit from an industrial hygienist named Danny Joyce. (Rec. Doc. 137-2.) Joyce's affidavit states that he has expertise in the area of asbestos work practices at Avondale. *Id.* at 1. Joyce states that federal vessels were built pursuant to contracts between Avondale and the Coast Guard and Navy. *Id.* at 2. He further avers that federal inspectors would inspect the supplies used in the construction of federal vessels to determine whether they included materials required by the contracts and the specifications. *Id.* at 3. This included asbestos-containing thermal insulation. *Id.* The affidavit states that if Avondale failed to use these materials, "the government could demand that Avondale replace the supplies with

conforming materials and/or put Avondale in default of contract."
*Id*. at 4.

Although Plaintiffs dispute that the federal government required Avondale to use asbestos,[5] the main thrust of their argument is that Defendants cannot rely upon the contracts for construction of the federal vessels because Avondale failed to abide by all terms of those contracts. Plaintiffs argue that the same contracts which required the use of asbestos also required Avondale to implement safety measures. Because Plaintiffs assert that Avondale failed to satisfy the safety provisions of the contract, they argue that Defendants cannot now avail themselves of the government contractor defense. Plaintiffs also argue that Defendants cannot satisfy the requirement that the contractor's actions conform to the government specifications. Plaintiffs argue that Defendants have provided no evidence that Avondale complied with contractual obligations regarding safety.

Despite Plaintiffs' arguments, Defendants have made a colorable showing of the first two *Boyle* elements. The affidavits

_____

[5] Plaintiffs argue that the government allowed Avondale to substitute asbestos-containing materials with other materials. To support this assertion, Plaintiffs attach a letter, without providing any explanation, that is purportedly dated September 27, 1945. (Rec. Doc. 138-1.) The letter was directed to "Mr. Richard Flint, Naval Architect," and sent from "L.L. Sanford, Regional Director, Gulf Coast." The letter states that "the office" was informed that no more asbestos cloth was available, and permitted the substitution of asbestos cloth with another material. Without more context, the Court does not draw any conclusions from this letter.

submitted by Defendants clearly state that the majority of the ships built at Avondale were built pursuant to contracts with the federal government, the federal government required the use of asbestos-containing materials, the federal government provided oversight, and Avondale would have breached these contracts if it failed to use the asbestos-containing materials. Defendants are not required to "win [their] case before [they] can have it removed," *see Zeringue*, 846 F.3d at 791, and they have satisfied their burden on these *Boyle* elements for removal purposes.

**B. The Third *Boyle* Element**

The final requirement for the military contractor defense is that the contractor must have warned the government of any dangers that were known to the contractor but not to the government. *Miller v. Diamond Shamrock Co.*, 275 F.3d 414, 421 (5th Cir. 2001). This requirement exists to prevent contractors from being incentivized to withhold safety information from the government. *Id*. However, "a government contractor only has the duty to warn the government of dangers of which it has knowledge but the government does not." *Trevino v. Gen. Dynamics Corp.*, 865 F.2d 1474, 1487 (5th Cir. 1989). A removing defendant can satisfy this prong for removal purposes by putting forth evidence that the government was aware of the dangers. *See Williams v. Todd Shipyards Corp.*, 154 F.3d 416, 1998 WL 526612, at *4 (5th Cir. 1998)

(unpublished) (noting that the defendant presented evidence establishing the government was aware of the dangers of asbestos during the World War II time period and stating that "[a]t the very least such evidence establishes a 'colorable' claim to the government contractor defense"); *see also Stout v. Borg-Warner Corp.*, 933 F.2d 331, 336 (5th Cir. 1991) ("[The manufacturer] only had the duty to warn the government of dangers of which the government had no knowledge.")

Defendants have satisfied the third *Boyle* factor for purposes of removal by demonstrating that the federal government was aware of the dangers of asbestos at the time of the alleged exposure. The affidavit of Danny Joyce states that the federal government was fully knowledgeable about the hazards of asbestos and that Avondale did not possess any more information on this subject than the government. (Rec. Doc. 137-2 at 4.) In his second affidavit, Thomas McCaffery also avers that the Navy was aware of the health effects as early as 1943. (Rec. Doc. 137-1 at 8.) Finally, Defendants submit the excerpted deposition testimony of Dr. Richard Lemen, a retired Assistant Surgeon General of the United States. (Rec. doc. 137-11.) Dr. Lemen testified that the federal government had been collecting literature related to the health effects of asbestos since the 1930s. *Id*. at 7. With this evidence, Defendants have made a colorable showing that the

government was aware of the dangers of asbestos and that Avondale was not responsible for presenting its own warning. *See Comardelle v. Pennsylvania Gen. Ins. Co.*, No. CIV.A. 13-6555, 2014 WL 1117969, at *6 (E.D. La. Mar. 18, 2014).

### CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' *Motion to Remand* (**Rec. Doc. 23**) is **DENIED**.

New Orleans, Louisiana this 2nd day of June, 2017.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE