UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **LORITA SAVOIE, ET AL** | * | **CIVIL ACTION NO.  2:15-cv-01220** |
| **VS.** | * | **SECTION "J" (3)** |
| | * | **JUDGE CARL J. BARBIER** |
| **HUNTINGTON INGALLS INC., ET AL** | * | **MAG. DANIEL E. KNOWLES, III** |

**PLAINTIFFS' OPPOSITION TO THE
MOTION FOR LEAVE TO FILE COUNTERCLAIM BY OWENS-ILLINOIS, INC.**

**MAY IT PLEASE THE COURT:**

Defendant, Owens-Illinois, Inc. ("O-I"), filed a motion for leave to file a counterclaim against plaintiff, Lorita M. Savoie.  (Rec. Doc. No. 160).   For the reasons set forth below, plaintiffs, Lorita M. Savoie, Marcia Savoie Medlin, Craig M. Savoie, Tania Savoie Alexander, Rodney A. Savoie, Greta Savoie Boudoin, and Dale J. Savoie, submit that the motion for leave should be denied.

**I.  THE COUNTERCLAIM IS UNTIMELY**

First and foremost, the counterclaim is untimely and should be denied on this basis alone.  This Court's Scheduling Order makes clear that "[a]mendments to pleadings, third-party actions, cross-claims and **counter-claims shall be filed** no later than **APRIL 21, 2017**."  (Rec. Doc. No. 123, at p. 1) (emphasis added).  This counterclaim is nearly four (4) months after the deadline set forth by this Court for filing such claims.  O-I offers no valid excuse nor does it set forth any good cause why it should be allowed to violate the Court's Scheduling Order.  Instead, O-I

surprisingly attempts to shift blame to the Court in arguing that its violation of the Scheduling Order should be allowed "because this Court just recently decided the jurisdictional issues, denying Plaintiffs' motion to remand on June 2, 2017, after several rounds of briefing." (Rec. Doc. No. 160-1, at p. 2). However, the Court's jurisdictional ruling had nothing to do with O-I's counterclaim. The fact that the Court had not yet ruled upon the final jurisdictional issue in no way prevented O-I from following this Court's Scheduling Order. Moreover, the Court ruled on the jurisdictional issue on June 2, 2017. O-I still waited until two (2) months after the Court's ruling before it even requested leave to file a counterclaim. If the Court's jurisdictional ruling was really the reason O-I did not file its counterclaim, then O-I could have filed its counterclaim shortly after the Court's jurisdictional ruling.

Moreover, this new counterclaim is dilatory. Where a party has no good reason for failing to bring new claims earlier, the Fifth Circuit has affirmed district courts' denial of motions for leave to amend as dilatory, especially when the amendment is made in response to another issue pending before the court. For example, in *Wimm v. Jack Eckerd Corp*. 3 F.3d 137, 141-142, the Fifth Circuit affirmed a district court's denial of a motion for leave to amend as dilatory where the party was "aware of the factual basis for their [new] claims for over a year before [they filed suit]" and then "delayed inexplicably for nine months before bringing their claims."

This case has been pending against O-I since August 21, 2014, when Joseph B. Savoie, Jr. filed his petition for damages against O-I, among others, for his contraction of mesothelioma caused by exposure to asbestos. Mr. Savoie was first diagnosed with mesothelioma on approximately July 17, 2014. On September 15, 2014, Mr. Savoie died, and on September 16,

2

2014, Mr. Savoie's wife, Lorita M. Savoie, and children, Marcia Savoie Medlin, Craig M. Savoie, Tania Savoie Alexander, Rodney A. Savoie, Greta Savoie Boudoin, and Dale J. Savoie, asserted any and all survival and wrongful death claims to which they are entitled. At no point since the initial filing of this action in August 21, 2014, did O-I ever attempt to file a counterclaim whether in state court or federal court.

      O-I seems to imply that the counterclaim is only now necessary because of plaintiffs' recent request in June for documents and a corporate representative. However, plaintiffs' request for the documents dates back to December 2014, when plaintiffs first issued discovery for production of the documents as well as a representative for a corporate deposition to testify as to the purported settlement which formed the basis of O-I's *Res Judicata* Exception. (Exhibit 1, <u>Notice of 1442 Deposition and Notice of Records Deposition of Owens-Illinois</u>). In fact, while this matter was pending in state court, plaintiffs had to ultimately file a Motion to Compel 1442 Deposition and Records Deposition of Owens-Illinois, Inc., which the court granted back in February 2015, ordering O-I to produce "all of the documents requested in the Notice of Records Deposition as well as a knowledgeable representative(s) to testify at a corporate deposition." (Exhibit 2, <u>Judgment signed February 23, 2015</u>). Subsequently, because of O-I's failure to comply with the state court's orders, plaintiffs filed a Motion to Hold Owens-Illinois, Inc. in Contempt, Motion to Enforce Order Regarding Plaintiffs Motion to Compel 1442 Deposition and Records Deposition of Owen-Illinois, Inc., and Motion to Strike Owens-Illinois, Inc.'s Defenses, which resulted in further orders from the state court. (Exhibit 3, <u>Judgment signed September 8,</u>

2015).[1]  Thus, O-I's argument that the counterclaim is now necessary because plaintiffs have only requested documents and a corporate deposition since June is incorrect.

Moreover, plaintiffs submit that it would be patently unfair to allow O-I to assert a counterclaim against Lorita Savoie four months after the Court's deadline to file such claims when plaintiffs actually filed a timely motion for leave to add additional allegations against three defendants that had been in the lawsuit since the inception of the case.  As this Court may recall, plaintiffs sought leave to amend the petition to add allegations against OneBeacon American Insurance Company, Pennsylvania General Insurance Company, and Travelers Insurance Company as alleged insures of the deceased Avondale executive officers.  Plaintiffs were not allowed to add these additional allegations even though plaintiffs' motion for leave was timely filed. (Rec. Doc. Nos. 140, 157).

Also, allowing the filing of this counterclaim is severely prejudicial to plaintiff.  As is detailed in plaintiffs' Motion to Dismiss Owens-Illinois, Inc.'s Exception of Res Judicata,[2] plaintiffs have been trying to obtain the complete settlement documents as well as a corporate deposition of O-I since December 2014.  O-I has stonewalled plaintiffs' attempts to obtain these documents, ostensibly because these documents confirm that in connection with the old asbestosis claim asserted by Joseph Savoie, future rights and claims for terminal mesothelioma were not settled.  O-I's position is that during Mr. Savoie's case regarding this old non-malignant

---

[1] O-I has stonewalled plaintiffs' attempts to discover documents.  Plaintiffs attempts and the court's rulings regarding same are outlined in Plaintiffs' Motion to Dismiss Owens-Illinois' Exception of Res Judicata, the memorandum in support of this motion, and the exhibits attached thereto.  (Rec. Doc. No. 165).

[2] Rec. Doc. No. 165.

asbestosis claim in 1997, he and his wife, Lorita Savoie, agreed not only to give up their future mesothelioma claims against O-I but also agreed to indemnify O-I regarding a future mesothelioma claim for the total sum of $4,000.  This argument is being made despite the fact that Mr. Savoie was not even diagnosed with mesothelioma until approximately July 17, 2014, seventeen years after O-I claims Mr. Savoie released his future mesothelioma claims against O-I. Unfortunately, after repeated attempts and court orders requiring production of the documents, plaintiffs still have been provided with complete copies of the actual settlement documents that govern the purported settlement.  O-I has not produced complete copies of the December 6, 1996, Master Settlement Agreement[3] between O-I and the Wilson Law Office and has not produced the Administrative Claims Handling Agreement that was made a part of that settlement agreement. It would be unfair to allow this late counterclaim, especially when the very documents that would govern whether mesothelioma claims were released or whether there was an agreement to indemnify supposedly do not exist.

In fact, a review of O-I' own Settlement Check Request for Joseph B. Savoie reveals that the check it claims was paid to Mr. Savoie for his asbestosis claim was issued in connection with a settlement that occurred on December 1, 1996.  (Exhibit 5, <u>Settlement Check Request Form</u>)[4]. To date, plaintiffs have never received any settlement document dated December 1, 1996, nor

---

[3] Although O-I produced the December 6, 1996, "Settlement Agreement", the document was missing page 3, and O-I failed to produce the Administrative Claims Handling Agreement "executed by the parties as part of this settlement." (See Rec. Doc. No. 161-22 pages 1-6, another copy if which is attached hereto as Exhibit 4 for ease of reference).

[4] Rec. Doc. No. 161-20, at p. 156 - attached to O-I's Motion to Re-Urge O-I's State Court Exception of Res Judicata,  another copy if which is attached hereto as Exhibit 5 for ease of reference).

have they received any document signed by Joseph Savoie, Jr. or the Wilson Firm dated December 1, 1996.  Of note, the "Settlement Agreement" that was produced by O-I is dated December 6, 1996.  (Exhibit 4).  Plaintiffs suspect that the Administrative Claims Handling Agreement may have been dated December 1, 1996, and is the document that actually governs the terms of the settlement since it was made a part of that settlement agreement that was dated December 6, 1996.  Plaintiffs have not been able to confirm this, however, because the Administrative Claims Handling Agreement has never been produced.  O-I is taking the position that it no longer has the Administrative Claims Handling Agreement.  O-I is seeking to have plaintiffs' survival action claims and Lorita Savoie's wrongful death claims dismissed and are seeking to pursue a counterclaim for indemnity without producing the complete settlement agreements.  This is extremely prejudicial.

While O-I will assert that the only necessary document that is required is a Receipt, Release, and Indemnification agreement, this is simply incorrect.  As testified to by Bradley Hiatt, the Corporate Representative of the Wilson Law Firm, the individual Receipt and Releases oftentimes had underlying Master Settlement Agreements.  (Exhibit 6, <u>Deposition of Wilson Law Firm (through Bradley Hiatt)</u>, at pp. 16:25-17:3, 35:5-19; 36:18-23).  Mr. Hiatt confirmed that the Wilson Law Firm represented Mr. Savoie for a non-malignancy, asbestosis claim only.  (*Id*. at p. 39:6-25).  He testified that the underlying Master Agreements would divide the cases by disease, and Mr. Savoie was paid for asbestosis.  (*Id*. at p. 40:2-17).  Mr. Hiatt confirmed that the Wilson Law Firm never filed a mesothelioma claim on behalf of Mr. Savoie and Mr. Savoie was not compensated for mesothelioma.  (*Id*. at p. 44:6-11).  He testified that it was the custom and practice of the Wilson Law Firm in a group settlement to have the clients sign a form release

regardless of the disease process, but that the underlying Master Settlement Agreements would oftentimes provide for comeback rights in the event that an individual who simply had asbestosis, a non-malignant disease, later developed a malignancy. (*Id*. at pp. 45:14 - 47:21).

> Q. And then in - - and often these master settlement agreements do provide for comeback rights if a non-malignant claim becomes or if a person who does not have mesothelioma later develops mesothelioma?
> . . .
> A. Yes, often times these master settlement agreements do provide for comeback rights for asbestosis, non-malignancy clients.
> Q. Comeback rights, for example, this particular kind of situation where Joseph Savoie developed mesothelioma?
> . . .
> A. Yes, this would be the exact kind of situation in which comeback rights would be exercised, that's correct.

(*Id*. at p. 46:2-21).

There is obviously more to this settlement agreement than what O-I is arguing. Where is the December 1, 1996, settlement document referenced in the O-I Check Request Form for Joseph Savoie? Where is page 3 of the December 6, 1996, settlement agreement? Where is the Administrative Claims Handling Agreement that was made a part of the December 6, 1996, settlement agreement? Because O-I has not produced these documents to plaintiffs or to the court and contends that it no longer has these documents, these questions may never be answered.

Instead of filing this counterclaim back in 2014 when this matter was originally filed, O-I has waited to file this counterclaim. This is likely because O-I has fought this entire case against having to produce the complete settlement documents regarding this issue, which has required plaintiffs to seek the state court's assistance on multiple occasions. It is likely that O-I did not bring this counterclaim at the outset of the litigation because the filing of such a counterclaim

would have eliminated any argument that the documents plaintiffs sought and the corporate testimony plaintiffs' sought were not discoverable. Instead, O-I has waited until nearly four (4) months after the deadline to file counterclaims and only three (3) months prior to the discovery deadline in this case. The allowing of this counterclaim will undoubtedly require additional discovery as to the confection of this settlement. Plaintiffs will likely have to depose the actual attorneys involved in the prior settlement since O-I claims it no long has complete records regarding the settlement. Plaintiffs are not confident that such discovery could be finished in the three months that are left before the discovery deadline, especially considering how long it has taken for O-I to even comply with the state court's prior orders, which is still has failed to do. Plaintiffs expect that an effort to depose the other individuals involved in this settlement may be met with opposition and further motion practice.

## II.     THERE IS NO MERIT TO THE COUNTERCLAIM; HOWEVER, IF ALLOWED, IT WILL RESULT IN ADDITIONAL CLAIMS

O-I is now for the first time this late in the litigation seeking indemnity from plaintiff, Lorita Savoie. Plaintiffs have always been of the position that there was no settlement of Joseph Savoie's mesothelioma claim in connection with the old asbestosis case (as set forth in Plaintiffs' Opposition to O-I's Motion to Re-urge O-I's State Court Exception of Res Judicata).[5] As such, there is no merit for O-I's counterclaim. If this counterclaim is allowed, however, it will necessitate the filing of claims against the Wilson Law Firm, O-I, and others involved.

There are simply too many missing documents and unknown pieces to this puzzle to allow such a counterclaim to be filed this late in the litigation, especially when there is absolutely

---

[5]Rec. Doc. No. 168, which opposition and exhibits attached thereto are adopted herein *in extenso*.

no reason why O-I could not have brought this counterclaim three years ago in August 2014, when this matter was first filed against O-I.

**WHEREFORE**, for the reasons set forth above, plaintiffs, Lorita M. Savoie, Marcia Savoie Medlin, Craig M. Savoie, Tania Savoie Alexander, Rodney A. Savoie, Greta Savoie Boudoin, and Dale J. Savoie, pray that Owens-Illinois, Inc.'s Motion for Leave to File Counterclaim is denied.

| **CERTIFICATE OF SERVICE** | Respectfully submitted: |
|---|---|
| I certify that a copy of the foregoing pleading has been served upon counsel for all parties by FAX, hand delivery, or mailing same to each, properly addressed and postage prepaid, on this 22nd day of August, 2017. | **ROUSSEL & CLEMENT** |
| _____s/ Jonathan B. Clement_____<br>**JONATHAN B. CLEMENT** | _____s/ Jonathan B. Clement_____<br>GEROLYN P. ROUSSEL #1134<br>PERRY J. ROUSSEL, JR. #20351<br>JONATHAN B. CLEMENT #30444<br>LAUREN R. CLEMENT #31106<br>BENJAMIN P. DINEHART #33096<br>1550 West Causeway Approach<br>Mandeville, Louisiana 70471<br>Telephone: (985) 778-2733<br>Fax: (985) 778-2734<br>ATTORNEYS FOR PLAINTIFFS |