UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


LORITA M. SAVOIE, ET AL.                    CIVIL ACTION

VERSUS                                      NO: 15-1220

PENNSYLVANIA GENERAL INSURANCE              SECTION: J(3)
CO., ET AL.

## ORDER AND REASONS

Before the Court is a *Motion to Re-urge State Court Exception of Res Judicata* **(Rec. Doc. 161)** filed by Owens-Illinois, Inc. ("Defendant"), an opposition thereto (Rec. Doc. 168) filed by Plaintiffs, and a reply (Rec. Doc. 190) filed by Defendant. Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED**.

## FACTS AND PROCEDURAL BACKGROUND

On October 7, 1991, Joseph Savoie ("Decedent") filed a lawsuit in the Civil District Court for the Parish of Orleans against Defendant and others, alleging that asbestos exposure during his employment at Avondale Shipyard caused him to develop asbestosis. During the pendency of that litigation, Decedent and his wife entered into a Receipt, Release, and Indemnification Agreement ("Release Agreement") with Defendant as part of a group

1

settlement.[1]  Per the terms of the Release Agreement, Decedent and his wife agreed to release Defendant from any causes of action arising out of Decedent's asbestos-related injury, including, *inter alia*, mesothelioma, cancer, wrongful death, and survival claims.  The scope of said agreement is the subject of the instant dispute.

Decedent was diagnosed with mesothelioma, a cancer caused by exposure to asbestos, seventeen years after he entered into the Release Agreement, and for that reason, filed the instant suit against Defendant (and others) in the Civil District Court for the Parish of Orleans on August 21, 2014.  Subsequent to filing this lawsuit, Decedent died as a result of his mesothelioma.  Decedent's surviving wife and children ("Plaintiffs") then filed an amended petition for damages and joined the lawsuit seeking survival and wrongful death damages pursuant to Louisiana law.  Defendants removed the lawsuit to this Court on April 16, 2015.  Defendant then filed the instant *Motion to Re-urge State Court Exception of Res Judicata* **(Rec. Doc. 161)** and Plaintiffs filed an opposition thereto (Rec. Doc. 168).  After considering the briefs, the motion is now before the Court.

---

[1] Defendant settled a total of 414 claims for a sum of $1,660,500.  The Savoies received $4,000 of that total settlement amount in exchange for dismissing Decedent's claims against Defendant.

**PARTIES' ARGUMENTS**

Defendant argues that the Court should grant its motion because the Release Agreement clearly and unambiguously releases Defendant from all future claims related to Decedent's asbestos exposure, including any mesothelioma claims, wrongful death claims, and survival actions.

Plaintiffs argue that the Court should deny Defendant's motion because Defendant has failed to carry its burden regarding two elements of *res judicata*. Additionally, Plaintiffs contend that the Court should deny Defendant's motion for the following reasons. First, Plaintiffs argue that the parties never intended to release mesothelioma claims. To that end, Plaintiffs also assert that the Release Agreement is void for lack of lawful cause because Decedent and his wife were never compensated for Decedent's mesothelioma diagnosis. Second, Plaintiffs allege that the Release Agreement violates public policy. Next, Plaintiffs contend that the Release Agreement is unenforceable as *contra bonos mores* because Decedent and his wife never received a copy of the master settlement agreement. Finally, Plaintiffs contend that Defendant failed to produce the complete settlement documents and that production is required before the Court can rule on Defendant's motion.

## DISCUSSION

The doctrine of *res judicata* precludes re-litigation of claims and issues arising out of the same factual circumstances when there is a valid final judgment. *Myers v. Nat'l Union Fire Ins. Co. of Louisiana*, 2009-1517, p. 5 (La. App. 4 Cir. 5/19/10), 43 So. 3d 207, 210; *see* La. Stat. Ann. § 13:4231. A party seeking to assert an exception of *res judicata* must prove:

> (1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of the final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation.

*Burguireres v. Pollingue*, 02-1385, pp. 8-11 (La. 2/25/03), 843 So. 2d 1049, 1053-5. While the doctrine of *res judicata* is ordinarily predicated upon a final judgment between the same parties, the doctrine is also applicable where a transaction or settlement of a disputed or compromised matter has been entered into between the parties. *Ellison v. Michelli*, 513 So. 2d 336, 338 (La. App. 4 Cir. 1987); *see Thompson v. Bank of New Orleans and Trust Co.*, 422 So. 2d 230, 231 (La. App. 4 Cir. 1982); *see also Ortego v. State, Dep't of Transp. & Dev.*, 96-1322, p. 7-8 (La. 2/25/97), 689 So. 2d 1358, 1364 (noting that under Louisiana law, a valid compromise may form the basis of a plea of *res judicata*).

A compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship. La. Civ. Code art. 3071. A compromise precludes the parties from bringing a subsequent action based upon the matter that was compromised. La. Civ. Code art. 3080. A party seeking to interpose a release instrument to support an exception of *res judicata* bears "[t]he burden of proof . . . to establish the requisites for a valid compromise, including the parties' intent to settle the differences being asserted in the action in which it is interposed." *Brown v. Drillers, Inc.*, 630 So. 2d 741, 747 (La. 1994); *Myers*, 43 So. 3d at 211. However, "[w]here a settlement and release refer expressly to the claim sought to be released by the party seeking to enforce the settlement . . . the burden [shifts] to the party seeking to oppose the enforcement of the [agreement] to prove that there was no meeting of the minds." *Hymel v. Eagle*, 2008-1287, p. 13 (La. App. 4 Cir. 3/18/09), 7 So. 3d 1249, 1257.

Accordingly, Defendant bears the burden of establishing *res judicata*. *See Myers*, 43 So. 3d at 211; *see also Brown*, 630 So. 2d at 747. Plaintiffs contend that Defendant has failed to meet its burden regarding the validity of the Release Agreement. In addition, Plaintiffs assert that Defendant has failed to establish

that the causes of action asserted in the current suit existed at the time Decedent and his wife executed the Release Agreement.[2]

## I.    The Release Agreement is Valid

Plaintiffs assert that the Release Agreement is invalid because it was not signed by both parties. Pursuant to La. Civ. Code art. 3072, a compromise must be reduced to writing and signed by the parties or their agents.  La. Civ. Code art. 3072; *see Sullivan v. Sullivan*, 95-2122, p. 4 (La. 4/8/96), 671 So. 2d 315; *see also Lavan v. Nowell,* 708 So. 2d 1052, 1052 (La. 1998). However, the signatures need not be contained in one document to satisfy the writing requirement of La. Civ. Code art. 3072.  *See Felder v. Georgia Pac. Corp.*, 405 So. 2d 521, 523 (La. 1981) ("Where two instruments, when read together, outline the obligations each party has to the other and evidence each party's acquiescence in the agreement, a written compromise agreement, as contemplated by La. C.C. art. 3071, has been perfected.").

Although the Release Agreement bears the signatures of Decedent and his wife, it does not contain Defendant's signature or that of one if its agents.  Nevertheless, other documents included in the record were signed by individuals acting on Defendant's behalf.  For example, Defendant's attorney, Walter

---

[2] Plaintiffs do not assert that Defendant has failed to meet its burden regarding the second, third, and fifth elements of *res judicata*.

Watkins, electronically signed the last page of the Settlement Agreement. *See Regions Bank v. Cabinet Works, L.L.C.*, 11-748, p. 15 (La. App. 5 Cir. 4/10/12), 92 So. 3d 945, 955 (noting that if a law requires a record to be in writing, or if the law requires a signature, an electronic signature satisfies the law). The signed Settlement Agreement provides that for each case dismissed, Defendant agrees to pay $4,000 if the principal diagnosis is asbestos-related. Accordingly, the record reflects a Settlement Check Request Form which affirms that Decedent was to receive $4,000 out of the total $1,660,500 group settlement. In addition, the group settlement check, for "full and final settlement of any and all claims," bears the signature of Defendant's treasurer. When construed together, these documents clearly demonstrate that Defendant agreed to pay Decedent and his wife $4,000 in exchange for them entering into the Release Agreement. *See* La. Civ. Code art. 3071. Therefore, because the signed documents outline the obligations and acquiescence of each party to the compromise, they satisfy the writing requirement of La. Civ. Code art. 3072. *See Felder*, 405 So. 2d at 523 ("[T]he release, signed by plaintiff, and defendant's $700.00 draft identified with the release, together constitute a compromise agreement in writing and signed by both parties.").

**II. Decedent's Mesothelioma Claim Existed When the Parties Executed the Release Agreement**

A party seeking to invoke the exception of *res judicata* must establish that the cause or causes of action asserted in the second suit existed at the time of the final judgment in the first litigation. *Burguireres v. Pollingue*, 02-1385, pp. 8-11 (La. 2/25/03), 843 So. 2d 1049, 1053-5. Plaintiffs assert that Defendant has failed to meet its burden regarding this element. Specifically, Plaintiffs contend that Decedent's claim did not exist until seventeen years after he signed the Release Agreement when Decedent was diagnosed with mesothelioma.

In *Legendre v. Travelers Indemnity Co.*, the Louisiana Fourth Circuit Court of Appeal analyzed whether a defendant met its burden regarding each element of *res judicata*. 14-0154, p. 7 (La. App. 4 Cir. 5/14/2014).[3] The plaintiff argued, *inter alia*, that the defendant could not establish the fourth element because he had

---

[3] *Legendre v. Travelers Indemnity Co.*, attached to Defendant's motion as an exhibit, is an unpublished "supervisory writ." It is the only case the Court has found that analyzes this element of *res judicata* as applied to a release of future mesothelioma claims. However, it traces the well-established principle that future things (*e.g.*, a future mesothelioma claim) may be the subject of a compromise agreement. *See Daigle v. Clemco Indus.*, 613 So. 2d 619, 622-25 (La. 1993) (discussing that future things may be the object of a contract and holding that a spouse's compromise of a potential wrongful death claim had *res judicata* effect).

not been diagnosed with mesothelioma at the time he signed the settlement agreement. *Id.* at 14. The court rejected the plaintiff's argument and affirmed the trial court's finding of *res judicata*. *Id.* at 15. Essentially, the court reasoned that for the purposes of *res judicata*, plaintiff's mesothelioma claim existed years before he was actually diagnosed because the release "included language that by signing the agreement, [the plaintiffs] would be releasing all claims which include future death claims, and they did in fact sign said agreement." *Id.*

Here, the Release Agreement includes an express release of future mesothelioma claims, wrongful death claims, and survival actions. Thus, following the court's reasoning in *Legendre*, because the Release Agreement contains language that includes the specific claims brought in the instant dispute, said claims "existed" when Decedent and his wife signed the Release Agreement. A compromise does not affect rights subsequently acquired by a party, unless those rights are expressly included in the agreement. La. Civ. Code art. 3078; *see also Daigle v. Clemco Indus.*, 613 So. 2d 619, 622-25 (La. 1993) (discussing that future things may be the object of a contract and holding that a spouse's compromise of a potential wrongful death claim had *res judicata* effect). Furthermore, notwithstanding Plaintiffs' argument that asbestosis and mesothelioma are different causes of action, Louisiana courts

have granted exceptions of *res judicata* in factually indistinguishable circumstances.[4] *See Hymel*, 7 So. 3d at 1256; *see also Hebert v. Avondale Industries*, *Inc.*, 13-0518, p. 2 (La. App. 4 Cir. 5/1/13); *Legendre*, 14-0154 at 15. Accordingly, the Defendant has established that Decedent's mesothelioma claim existed at the time Decedent signed the Release Agreement.

## III. Plaintiffs Have Failed to Carry Their Burden of Proving the Invalidity of the Release Agreement

Because Defendant has carried its burden regarding the existence of a valid compromise, the burden now shifts to Plaintiffs to prove that the Release Agreement is invalid. *See Ellison*, 513 So. 2d at 339 ("Compromises are favored in the law and the burden of proving the invalidity of a compromise is on the party attacking the agreement."). A compromise precludes the parties from bringing a subsequent action based upon the matter that was compromised. La. Civ. Code art. 3080. Thus, because the Release Agreement includes an express release of mesothelioma claims, Plaintiffs, as the party attacking the agreement, bear the burden of proving its invalidity. *See Hymel*, 7 So. 3d at 1256 (noting that the burden shifts to the party seeking to oppose the

---

[4] Plaintiffs have produced no cases wherein a court has expressly dismissed an exception of *res judicata* because the plaintiff's mesothelioma claim did not exist at the time the parties entered into the release.

enforcement of the settlement agreement if the settlement agreement expressly refers to the claim sought to be released).

## A. The Parties Intended to Settle Mesothelioma Claims

Plaintiffs allege that Decedent and his wife did not intend to settle future mesothelioma claims because they were unaware that Decedent could contract mesothelioma. In addition, Plaintiffs contend that the mere nuisance value they received in exchange for the Release Agreement evinces their lack of intent to settle such claims. Under Louisiana law, "the compromise instrument is the law between the parties and must be interpreted according to the parties' true intent." *Brown*, 630 So. 2d at 748. A compromise settles only those differences that the parties clearly intended to settle, including the necessary consequences of what they express. La. Civ. Code art. 3076. Even when valid, releases of future actions are narrowly construed to assure that the parties fully understand the rights released and the resulting consequences. *Brown*, 630 So. 2d at 753. As a result, if the release instrument leaves any doubt as to whether a particular future action is covered by the compromise, it should be construed not to cover such future action. *See id.* ("Defendants' failure to use language in the release instrument which would have clearly provided for a waiver of a future wrongful death action evidences a lack of intent to compromise such future action.");

*see also Dimitri v. Dimitri*, 2000-2641, pp. 6-7 (La. App. 4 Cir. 1/30/02), 809 So. 2d 481, 486 (finding that a general release of "all claims" did not include a release of plaintiff's claims for personal injuries and total medical expenses).

In *Breaux v. Mine Safety Appliances Co.*, the Louisiana Fifth Circuit Court of Appeal held that a general release of "any and all claims" did not affect the plaintiff's ability to assert a subsequent cause of action for mesothelioma. 98-113, p. 2-3 (La. App. 5 Cir. 8/25/98), 717 So. 2d 1255, 1255-56. The plaintiff filed a lawsuit against his employer alleging damages from work-related asbestos exposure, but later settled the claim and executed a general release of "any and all claims" for $500. *Id.* at 2. Sixteen years later, the plaintiff was diagnosed with mesothelioma and filed a second suit against the same defendant. *Id.* at 2-3. The court held that the plaintiff's claims were not barred by *res judicata* for two specific reasons: (1) the plaintiff was not diagnosed with an asbestos-related disease at the time he entered into the settlement agreement and (2) the settlement agreement failed to include an express release of mesothelioma claims. *Id.* at 6. In light of this, the court concluded that despite the plaintiff's general release of any and all claims, the plaintiff never intended to release the defendant from future mesothelioma claims. *Id.* ("If the agreement intended to include mesothelioma,

defendant would surely have included it in the listed diseases. As plaintiff argues, this settlement was a nuisance settlement.").

In contrast, the Louisiana Fourth Circuit Court of Appeal held that an express release of all future mesothelioma and cancer claims effectively barred the plaintiff's subsequent mesothelioma claim in *Hymel v. Eagle, Inc*. The plaintiff in *Hymel* sued a number of defendants alleging that he was exposed to asbestos while he worked at Avondale Shipyard. *Hymel*, 7 So. 3d at 1251. The plaintiff subsequently settled the suit for $15,000 and executed a "Release, Discharge, and Indemnity Agreement" that included a specific release of any and all future asbestos-related mesothelioma and cancer claims. *Id.* Notwithstanding the release, the plaintiff initiated a second lawsuit against the same defendant years later after he contracted mesothelioma. *Id*. at 1252. The Fourth Circuit of Appeal found the facts in *Hymel* distinguishable from those in *Breaux* and held that the plaintiff's claim was barred by the exception of *res judicata*. *Id*. at 1258.

The court reasoned that, unlike *Breaux*, the settlement agreement specifically mentioned both mesothelioma and cancer by name. *Hymel*, 7 So. 3d at 1254. Also, unlike *Breaux*, the plaintiff had an asbestos-related disease (asbestosis) at the time he entered into the agreement and was represented by counsel. *Id.* at 1253-54. Regarding the value received by the plaintiff, the court noted

that the $15,000 settlement amount was for a sum "thirty time[s] greater than the settlement in *Breaux*, and therefore, [could not] be characterized as a nuisance settlement." *Id.* at 1254. Furthermore, the court reasoned that because the plaintiff had sued multiple defendants, the settlement amount did not represent the total value of what he could expect to receive for having contracted mesothelioma. *Id.*[5]

The Release Agreement at issue contains an express release of claims involving "*mesothelioma* . . . and all related lung diseases . . . whether past, present or future, without limitation, including *wrongful death* and *survival actions*." Such clear and unambiguous language leaves no doubt that the parties intended to release not only Decedent's pending asbestosis claim, but also future mesothelioma claims, wrongful death claims, and survival actions. *See Brown*, 630 So. 2d at 754 ("Defendants' failure to use language in the release instrument which would have clearly provided for a waiver of a future wrongful death action evidences a lack of intent to compromise such future action."); *see also Breaux*, 717 So. 2d at 1257 ("[I]f the agreement intended to include mesothelioma, defendant would surely have included it in the listed diseases."). Compromises are governed by the same general rules

---

[5] The Louisiana Fourth Circuit Court of Appeal mirrors this analysis in *Herbert v. Avondale Indus., Inc.*, 13-0518 (La. App. 4 Cir. 5/1/13).

of construction applicable to contracts, *Brown*, 630 So. 2d at 748, and "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent," La. Civ. Code art. 2046.[6]

Despite this, Decedent's wife asserts that no one explained the releases to her or her husband, that neither she nor her husband could read the releases, and that she had never heard of mesothelioma until her husband was diagnosed. Like the plaintiff in *Hymel*, Decedent was diagnosed with asbestosis, an asbestos-related disease, at the time he and his wife signed the Release Agreement. Decedent and his wife warranted in the Release Agreement that they had "discussed [his] physical and medical condition with knowledgeable medical authorities" and "were fully aware that his condition may grow worse that [sic] it is or seems." By signing the Release Agreement, Decedent and his wife affirmed that they had read the agreement, discussed it with their attorney, and understood all the provisions of the agreement in its entirety. *Id.* A person who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, or that it was not explained or that he did

---

[6] Because the facts establish that both parties intended to settle mesothelioma claims, the above analysis is also applicable to Plaintiffs' assertions that the Release Agreement should be rescinded for error.

not understand it. *Hymel*, 7 So. 3d at 1258 (citing *Smith v. Leger*, 439 So. 2d 1203 (La. App. 1st Cir. 1983); *see First South Farm Credit, ACA v. Gailliard Farms, Inc.*, 38, 731, p. 3 (La. App. 2 Cir. 08/18/04), 880 So. 2d 223, 225. Given Decedent's diagnosis at the time he executed the Release Agreement, the specific reference to mesothelioma contained therein, and the fact that he and his wife were represented by counsel, Plaintiffs' argument that Decedent and his wife failed to understand the terms of the Release Agreement is unavailing. *See Hymel*, 7 So. 3d at 1257 ("A party represented by counsel may not defeat a written settlement and release that is unambiguous on its face by merely alleging that he did not understand it."); *see also Herbert*, 13-0518, pp. 3-5 (La. App. 4 Cir. 5/1/13).

Plaintiffs further contend that the parties did not intend to release claims for terminal malignant mesothelioma for $4,000—an amount Plaintiffs characterize as a mere nuisance sum. Louisiana courts have reasoned that when a settlement agreement includes a specific reference to the claim sought to be released, the actual value a party receives for the release is inconsequential. *See e.g.*, *Hymel*, 7 So. 3d at 1254 ("[Plaintiff] is not in a position to argue that he traded away his whole claim for mesothelioma for $15,000, *although it would not have made any difference had he done so as long as the record shows that he did so, as it does.*")

(emphasis added). Notably, the Fourth Circuit Court of Appeal has upheld a similar release for a much smaller sum. *Herbert*, 13-0518 at pp. 3-5 (finding that plaintiff released his future mesothelioma claims for $1,500). "It is not the province of the courts to relieve a party of a bad bargain, no matter how harsh." *Hymel*, 7 So. 3d at 1253 (citations omitted).[7] Accordingly, the Court finds that Plaintiffs have failed to establish that Decedent and his wife did not intend to settle future mesothelioma claims.[8]

### B. The Release Agreement Does Not Violate Public Policy

Plaintiffs also allege that the Release Agreement is against public policy because it violates La. Civ. Code art. 2004. Pursuant to La. Civ. Code art. 2004, "[a]ny clause is null that, in advance, excludes or limits the liability of one party for causing physical injury to the other party." La. Civ. Code art. 2004. Public policy strongly favors compromise agreements and the finality of settlements. *Brown*, 630 So. 2d at 757; *see Rivett v. State Farm Fire and Casualty Co.*, 508 So. 2d 1356 (La. 1987); *see also Hymel*, 7 So. 3d at 1256. The purpose of La. Civ. Code art.

---

[7] Moreover, like the court reasoned in *Hymel*, Plaintiffs have named sixteen defendants in the instant suit, and could possibly recover a much larger sum from those defendants than the $4,000 Decedent received for settling with Defendant.

[8] The above analysis is also applicable to Plaintiffs' assertions that the Release Agreement is null for lack of lawful cause.

2004 is to express the principle that it is against public policy to permit a party to obtain a license for commission of future bad acts. *Hymel*, 7 So. 3d at 1255; *see Ramirez v. Fair Grounds Corp.*, 575 So. 2d 811, 812-13 (La. 1991) (holding that a release agreement entered into four months before the alleged tortious conduct was invalid under La. Civ. Code art. 2004). "However, where the bad act has already been committed the public policy is not the same . . . [i]t is then too late to prevent the bad act . . . [i]t is then time for another public policy to govern, the policy that favors settlement and compromise." *Hymel*, 7 So. 3d at 1255.

Here, the tortious act—Decedent's exposure to asbestos—had already been committed when Decedent signed the Release Agreement. For that reason, the public policy rationale underlying La. Civ. Code art. 2004 then shifts to one favoring settlement and is consistent with how various courts have interpreted similar agreements that contain releases for future causes of action. *See Hymel*, 7 So. 3d at 1254; *Daigle v. Clemco Indus.*, 613 So. 2d 619, 623-23 (La. 1993); *Herbert*, 13-0518, p. 2 (La. App. 4 Cir. 5/1/13).

C. **The Doctrine of** *Contra Bonos Mores* **Does Not Bar the Enforceability of the Release Agreement**

Plaintiffs argue that the Release Agreement is unenforceable as *contra bonos mores* because Defendant failed to establish that Decedent and his wife were advised of the workings of the master

settlement agreement.  Plaintiffs contend that Decedent and his wife never received a copy of the master settlement agreement nor did they give informed consent prior to entering into said agreement.  In short, Plaintiffs attack the conduct of Decedent's previous counsel with respect to their handling of the group settlement.

It is well-settled that parties are bound by their agreement so long as such agreements are not *contra bonos mores* (against good morals) or violative of some prohibitory law.  *See Livingston Roofing Co. v. E. E. Rabalais & Son, Inc.*, 401 So. 2d 1047, 1049 (La. Ct. App. 1981).  The Rules of Professional Conduct require an attorney involved in a group settlement to disclose the existence and nature of all the claims involved and obtain the informed consent of each client before participating in an aggregate settlement.  *Model Rules of Prof'l Coduct r. 1.8(g)*.  To that end, courts have imposed sanctions on attorneys that have failed to disclose the existence of an aggregate group settlement and/or have failed to obtain the informed consent of all plaintiffs before finalizing the settlement.  *See e.g.*, *In re Hoffman*, 2003-2499, p. 15 (La. 9/9/04), 883 So. 2d 425, 435 (imposing a deferred three-month suspension on an attorney because he failed obtain the informed consent of all of his clients before entering into a group settlement); *In re Ungar*, 2009-0573, pp. 16-18  (La. 10/30/09), 25

So. 3d 101, 110 (imposing a three-year suspension on an attorney because he intentionally withheld information from his two clients regarding a class-action settlement).

Contrary to Plaintiffs' contentions, Defendant has no burden to prove that Plaintiffs' former counsel acted responsibly and obtained informed consent. To the extent that Plaintiffs attempt to rely on previous counsel's purported violation of the Rules of Professional Conduct as a means to invalidate the Release Agreement, the cases cited by Plaintiffs fail to support their proposition. *See In re Hoffman*, 883 So. 2d at 435 (involving an attorney disciplinary proceeding and imposing a suspension on the attorney); *see also In re Ungar*, 25 So. 3d at 110 (involving an attorney disciplinary proceeding and imposing a suspension on the attorney); *Vidrine v. Abshire*, 558 So. 2d 288, 294 (La. Ct. App. 1990) (declining to determine on the merits the enforceability of a contract between an attorney and plaintiff found to be in violation of Rule 1.8 of the Rules of Professional Conduct). Plaintiffs bear the burden of proving that the Release Agreement is invalid and Plaintiffs' mere assertions that their former counsel did not obtain informed consent, without more, is insufficient to invalidate the Release Agreement. *See Jones v. ABC Ins. Co.*, 11-632, pp. 11-12 (La. App. 5 Cir. 12/12/13), 130 So. 3d 35, 42 (reasoning that plaintiff's deposition, affidavit,

and deposition testimony of renowned ethics attorney was sufficient to create an issue of material fact as to whether plaintiff's counsel obtained plaintiff's informed consent to the aggregate settlement).

### D. The Release Agreement is Valid Despite the Missing Documents

Finally, Plaintiffs argue that the exception of *res judicata* should be denied because Defendant failed to produce the complete settlement documents; specifically: (1) page three of the Master Settlement Agreement, (2) the Administrative Claims Handling Agreement, and (3) a settlement document dated December 1, 1996.[9] Based on the testimony of Bradley Hiatt, the corporate representative of law firm that represented Decedent during the settlement, Plaintiffs contend that the missing documents likely contain "comeback rights" for claimants that develop a malignancy in the future. Accordingly, Plaintiffs assert that the Court should refrain from granting Defendant's motion until said documents are produced.

---

[9] The Settlement Check Request Form shows that Defendant purportedly paid Decedent $4,000 in conjunction with a settlement that occurred on December 1, 1996. Plaintiffs assert that Defendant has not produced any settlement document dated December 1, 1996. Plaintiffs allege that the Administrative Claims Handling Agreement may have been the document dated December 1, 1996. Thus, Plaintiffs allege that the Administrative Claims Handling Agreement is the document that actually governs the terms of the settlement agreement.

Plaintiffs hope to show that a separate, governing settlement agreement between Defendant and Decedent excluded potential mesothelioma and wrongful death claims despite their specific inclusion in the executed release. "The meaning and intent of the parties to a compromise is ordinarily determined from the four corners of the instrument, and extrinsic evidence is inadmissible to explain or to contradict the terms of the instrument." *Trahan v. Coca Cola Bottling Co. United*, 2004-0100, p. 15 (La. 3/2/05), 894 So. 2d 1096, 1107 (internal citations omitted); *see also Hudson v. Progressive Sec. Ins. Co.*, 43,857, p. 9 (La. App. 2 Cir. 12/10/08), 1 So. 3d 627, 632. "When a dispute occurs regarding the scope of a compromise, extrinsic evidence can be considered to determine exactly what differences the parties intended to settle, but absent some substantiating evidence of mistaken intent, no reason exists to look beyond the four corners of the instrument to ascertain the parties' intent." *Id.; see Rein v. Luke Edwards, LLC*, 2005-754, p. 5 (La. App. 3 Cir. 2/1/06), 921 So. 2d 1158, 1162; *see also Dimitri*, 809 So. 2d at 486.

By its plain terms, the Release Agreement releases claims for "all known or unknown personal injuries, results, diseases, consequences which may have resulted or may result in the future from the contraction of . . . asbestos . . . *mesothelioma* . . . and all related lung diseases or respiratory system

complications, whether past, present or future, without limitation, including *wrongful death* and *survival actions*." As discussed *supra*, the face of the Release Agreement clearly and unequivocally establishes that Decedent intended to release Defendant from all liability concerning any asbestos-related claims, including any future contraction of mesothelioma. The Release Agreement further provides that "Releasors agree that this [Release Agreement] shall serve as the *only evidence* necessary to prove a complete compromise of all claims, and to support and prove any obligation hereunder." Insofar as Plaintiffs attempt to condition Decedent's release of future mesothelioma claims on the purported existence of a "comeback clause," said clause must appear within the four corners of the Release Agreement. Furthermore, Plaintiffs have not identified a single case in which a plaintiff has used a "comeback clause" to assert a subsequent mesothelioma claim. Although Bradley Hiatt testified that "often times the master settlements do provide for comeback rights," Mr. Hiatt was not involved in the negotiations of the settlement and has no personal knowledge of any master settlement affecting Plaintiffs' claims against Defendant. Mr. Hiatt's speculative testimony, devoid of any specific facts regarding the Release Agreement at issue, is insufficient to overcome the express and unambiguous language contained therein.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's *Motion to Re-urge Exception of Res Judicata* **(Rec. Doc. 161)** is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiffs' *Motion to Dismiss Owens-Illinois' Exception of Res Judicata* **(Rec. Doc. 165)** is **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that Plaintiffs' *Motion for Leave to File Sur-Reply* **(Rec. Doc. 195)** is **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that Plaintiffs' *Motion to Seal Document* **(Rec. Doc. 196)** is **DENIED AS MOOT.**

New Orleans, Louisiana, this 12th day of October, 2017.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE