# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LORITA SAVOIE, ET AL. | CIVIL ACTION |
| | NO. 15-1220 |
| VERSUS | SECTION: J(3) |
| HUNTINGTON INGALLS, INC., ET AL. | JUDGE BARBIER<br>MAG. JUDGE DOUGLAS |

## ORDER & REASONS

This is an asbestos exposure case. Plaintiffs are the wife and children of Joseph B. Savoie, Jr. ("Savoie"), who died from mesothelioma. Before the Court is defendant **Avondale's[1] Renewed Motion for Partial Summary Judgment to Establish the Settlements of Certain Non-Parties**. **(Rec. Doc. 280)**, Plaintiffs' opposition (Rec. Doc. 344), and Avondale's reply (Rec. Doc. 478). Avondale seeks to establish that Savoie entered into eight settlements that released multiple entities from liability for his mesothelioma, even though those settlements occurred over a decade before he was diagnosed with that disease. After considering the parties' arguments, the summary judgment record, and the applicable law, the Court holds for reasons explained below that five of the releases included Savoie's mesothelioma claim, and

---

[1] As used in this Order & Reasons, "Avondale" refers to Huntington Ingalls Incorporated (f/k/a Northrop Grumman Shipbuilding, Inc., f/k/a Northrop Grumman Ship Systems, Inc., f/k/a Avondale Industries, f/k/a Avondale Shipyards, Inc., and f/k/a Avondale Marine Ways, Inc.), Albert L. Bossier, Jr., J. Melton Garrett, and OneBeacon America Insurance Company and Pennsylvania General Insurance Company, in their capacities as alleged insurers of James Bull, C. Edwin Hartzman, Hettie "Dawes" Eaves, Henry "Zac" Carter, John McCue, and Ewing Moore.

three did not. Accordingly, the Court grants in part and denies in part Avondale's motion.

## BACKGROUND

Savoie worked at Avondale Shipyards from approximately 1948 through 1995. In 1990, Savoie was diagnosed with asbestosis—a respiratory disease that involves scarring of lung tissue caused by inhalation of asbestos particles. *See Rando v. Anco Insulations Inc.*, 2008-1163 (La. 5/22/09), 16 So. 3d 1065, 1073 n.4 (defining asbestosis). In 1991, Savoie and nearly 3,000 other plaintiffs sued multiple defendants for their asbestos-related injuries in *In Re Asbestos Plaintiffs v. Borden*, No. 91-18397, which was filed in Orleans Parish Civil District Court ("the *Borden* case"). For Savoie, that litigation resulted in multiple settlements during the 1990s and the early 2000s.

Years later, Savoie became "one of those tragically unlucky victims whose exposure to asbestos eventually evolved into mesothelioma." *Hymel v. Eagle, Inc.*, 2008-1287 (La. App. 4 Cir. 3/18/09), 7 So. 3d 1249, 1251. Mesothelioma is a type of cancer that usually begins in the pleura, the membrane that surrounds the lungs and lines the wall of the chest cavity. *Rando*, 16 So. 3d at 1072 & n.1. Savoie was diagnosed with mesothelioma on July 17, 2014. About a month later, he filed the instant action against Avondale and other defendants, claiming his mesothelioma was caused by exposure to asbestos at Avondale Shipyards. Savoie passed away on September 15, 2014. His wife and children were substituted as plaintiffs, and the petition was amended to assert survival and wrongful death claims.

During the course of this litigation, Avondale subpoenaed the Wilson Law Firm—Savoie's attorneys during the *Borden* case[2]—for copies of Savoie's settlement agreements. The subpoena stated that the documents "may have any amounts paid pursuant to any settlement or compromise deleted." (Rec. Doc. 280-2 at 2-3). The law firm responded by producing seventeen release documents with the settlement amounts redacted. (*See* Ex. 1 to Avondale's Mot. for Summ. J., Rec. Doc. 280-2).

Avondale filed the instant motion for partial summary judgment contending that eight of the seventeen releases discharged not only Savoie's contemporaneous asbestosis claim, but all future claims for asbestos-related illnesses, including mesothelioma, against thirty-one entities. Avondale does not claim to be one of the releasees, however. Rather, its eventual goal is to use these releases as a basis for claiming virile-share credits against any judgment that may be rendered against it, provided it can prove at trial that the releasees are actually at fault for causing Savoie's mesothelioma. This is further explained in the margin.[3] Plaintiffs raise

[2] The record reflects that Savoie was represented by the Wilson Law Firm and the Murray & Wilson Law Firm during the *Borden* case and the resulting settlements. Different counsel represents Plaintiffs in the case at bar.

[3] The parties agree that complete solidary liability under Louisiana law—where multiple tortfeasors share equally in liability to the plaintiff and any one of them may be compelled to pay the entire judgment—applies to Plaintiffs' survival claims (the wrongful death claims were previously dismissed and are not at issue here, Rec. Doc. 484, but would likely be governed by comparative fault). Under that regime, if a tortfeasor pays more than his share of a solidary obligation, he could subrogate to the plaintiff's rights and seek contribution from other tortfeasors for their respective shares of the judgment. *See Farbe v. Cas. Reciprocal Exch.*, 2000-0076 (La. 7/6/00), 765 So. 2d 994, 996. However, when a plaintiff settles with and releases one of several solidary obligors, he deprives the remaining obligors of the right to contribution against the released obligor. *Id.* "Accordingly, . . . proof by the remaining obligors of fault on the part of the released obligor gave rise to a reduction in the plaintiff's recovery against the remaining obligors in proportion to the total number of obligors found to be solidarily liable." *Taylor v. Fid. & Guar. Ins. Co.*, 630 So. 2d 237, 239 (La. 1993). "Importantly, a nonsettling tortfeasor is entitled to a reduction in the judgment only if he proves at trial that the released party was at fault and therefore solidarily liable." *Farbe*, 765 So. 2d at 997.

multiple arguments in opposition, most of which fall into one of two categories: (1) Avondale has not shown that the release documents constitute enforceable settlements, and, (2) even if the releases are enforceable in a general sense, they did not compromise Savoie's future claim for mesothelioma.

## LEGAL STANDARD

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); Fed. R. Civ. P. 56. The moving party bears the initial burden of demonstrating to the court that there is an absence of genuine factual issues. *Id*. Once the moving party meets that burden, the non-moving party must go beyond the pleadings and designate facts showing that there is a genuine issue of material fact in dispute. *Id*. "A factual dispute is 'genuine' where a reasonable jury could return a verdict for the non-moving party. If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial and summary judgment is proper." *Weber v. Roadway Exp., Inc.*, 199 F.3d 270, 272 (5th Cir. 2000) (citations omitted). The non-moving party's burden "is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. [The courts] resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of

contradictory facts. [Courts] do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted)(citations omitted).

## DISCUSSION

The discussion is divided into three parts. First, Louisiana law regarding release of future claims is reviewed. Second, the Court examines the language of each release to determine if any included Savoie's future claim for mesothelioma. This part also discusses Plaintiffs' arguments which are specific to a particular release. The third part addresses Plaintiffs' arguments that apply to all of the releases.

### A.     Law Regarding Release of Future Claims

There is no dispute that Savoie was diagnosed with asbestosis but not mesothelioma at the time he executed the subject releases. Mesothelioma would not manifest until thirteen years after the last release was signed. The core issue, then, is whether Savoie released a future claim for mesothelioma when he executed these releases.

"A compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship." La. Civ. Code art. 3071.[4] The burden is on the party interposing the release to establish the requisites for a valid compromise, including the parties' intent to settle their differences in the action. *Brown v. Drillers, Inc.*, 93-

---

[4] The Court quotes from the current version of the Civil Code, although older versions of those articles apply to Savoie's survival claims. The parties agree, however, that the intervening revisions did not change the substantive law.

1019 (La. 1/14/94), 630 So. 2d 741, 754; *but cf. Hymel, infra.* "A compromise settles only those differences that the parties clearly intended to settle, including the necessary consequences of what they express." La. Civ. Code art. 3076. While Louisiana law does not prohibit parties from settling potential future claims that may arise from a past breach of duty, "releases of future actions are narrowly construed to assure that the parties fully understand the rights released and the resulting consequences." *Brown*, 630 So. 2d at 754. "[I]f the release instrument leaves any doubt as to whether a particular future action is covered by the compromise, it should be construed not to cover such future action." *Id.*

*Brown* explained that "the meaning and intent of the parties to a written instrument, including a compromise, is ordinarily determined from the four corners of the instrument, and extrinsic (parol) evidence is inadmissible either to explain or to contradict the terms of the instrument." *Id.* at 748. However, "a general release will not necessarily bar recovery for those aspects of a claim not intended by the parties to be covered by the release." *Id.* at 749. When a party produces "substantiating evidence of mistaken intent," a court may look beyond the four corners of the instrument to ascertain intent. *Id.* Absent such evidence, however, courts "have not hesitated to confine their analysis to the four corners of the instrument." *Id.* at 750.

Two post-*Brown* decisions by Louisiana intermediate appellate courts provide useful guideposts. In *Breaux v. Mine Safety Appliances Co.*, 98-133 (La. App. 5 Cir. 8/25/98), 717 So. 2d 1255, the plaintiff sued for asbestosis in 1982. Around that time,

the plaintiff's doctors informed him that he did not have asbestosis. In 1983, the plaintiff executed a release in favor of the defendant in exchange for $500. The document stated that the plaintiff released the defendant "from any and all claims . . . or disabilities of any nature whatsoever, including but not restricted to asbestosis, silicosis and/or pneumonoconiosis, past, present or future, and any and all other claims, past, present or future arising out of . . . occupational diseases contracted while employed at or by [defendant]." *Id.* at 1257. Thirteen years later, the plaintiff developed mesothelioma and sued the same defendant again. The Louisiana Fifth Circuit held that the previous release did not bar the plaintiff's current mesothelioma claim, explaining:

> Although the agreement refers to "disabilities of any nature", "past, present or future," "arising out of or in any manner whatsoever connected with or resulting from, either directly or indirectly, injury sustained or occupational diseases contracted while employed at or by [the defendant]," it is not logical to expect that plaintiff intended to release defendant for the future manifestation of this type of cancer for $500. This is a terrible disease. If the agreement intended to include mesothelioma, defendant would surely have included it in the listed diseases. As plaintiff argues, this settlement was a nuisance settlement. Thus, we find that the language of the agreement does not include the contraction of this type of cancer which would not manifest for many years, nor did plaintiff intend to include it in the settlement. Plaintiff signed the agreement expressly because he did not have any of the asbestos related diseases at that time.

*Id.*

The Louisiana Fourth Circuit reached the opposite result in *Hymel v. Eagle, Inc.*, 2008-1287 (La. App. 4 Cir. 3/18/09), 7 So. 3d 1249. In that case, the plaintiff was diagnosed with asbestosis in 1993, sued the same year, and then executed a release in 1998 in exchange for $15,000. The release stated:

> It is further understood and agreed that the aforementioned provisions are intended to release and forever discharge the released parties from any and all liability on account of or in any way growing out of occupational diseases or conditions attributable to exposure to asbestos . . . including . . . any future or consequential condition or injury, including but not limited to death, **_mesothelioma, cancer_**, shortness of breath, fear of cancer or increased risk of cancer . . . .

*Id.* at 1252 (emphasis added in *Hymel*). Years later, the plaintiff developed mesothelioma and sued the same defendant again. The court held that the prior release "clearly and unambiguously compromised any prospective claims that the plaintiff might have for mesothelioma or cancer." *Id.* at 1258. The court distinguished the facts before it from those considered in *Breaux*, noting:

> (1) the settlement specifically covered **_both_** mesothelioma and cancer by name, (2) the plaintiff had an asbestos related disease at the time he signed the settlement (asbestosis); (3) it was for a sum thirty time[s] greater than the settlement in *Breaux* and, therefore, cannot be characterized as a "nuisance settlement"; and (4) there is no indication in *Breaux* that the plaintiff had the potential to recover additional sums from other defendants as there is in the instant case.

*Id.* at 1254 (emphasis in original). *Hymel* further explained:

> Where a settlement and release refer expressly to the claim sought to be released by the party seeking to enforce the settlement, that alone is sufficient to shift the burden to the party seeking to oppose the enforcement of the settlement and release to prove that there was no meeting of the minds or that there was fraud or ill practices. It is not sufficient to raise the issue to merely make the self-serving allegation that there was no meeting of the minds. A party represented by counsel may not defeat a written settlement and release that is unambiguous on its face by merely alleging that he did not understand it. Otherwise, no settlement would be enforceable without more litigation which defeats the whole public policy favoring settlements. Signatures on documents are not mere ornaments. . . . There is little incentive to settle if a party to the settlement agreement may later seek to void it based merely on his self-serving statements, without more, and in the absence of any evidence of fraud or ill practices, that he misunderstood what he signed or that he did not intend to sign what he signed.

*Id.* at 1257-58 (citations omitted).

With this background in mind, the Court turns to the language in the eight releases.

**B.     The Eight Releases**

1.     <u>Champion Release</u>

In the Champion Release, dated March 20, 1996, Savoie and his wife released:

> Champion International Corporation, and its predecessor U.S. Plywood Corporation . . . from any and all claims . . . which we now may have ***or in the future may have*** against Champion . . . in any manner arising out of or in any way connected with . . . the alleged exposure of the Injured Person to various asbestos-containing materials . . . as well as any and all consequences thereof, whether heretofore ***or hereafter accrued*** or whether known or unknown to the Claimants . . . .
>
> . . .
>
> We understand that the Injured Person now may be suffering from or, ***in the future, may suffer from*** asbestos-related diseases or injuries (such as ***cancer or mesothelioma***) . . . which diseases and/or injuries may not have manifested themselves at the present time. It is our intention and agreement that any claims against Champion, of any kind or character whatsoever, which we might have for, and/or arising out of or related to, any such asbestos-related diseases and injuries and/or death, are the subject of this Release and are hereby released.

(Rec. Doc. 280-2 at 38-39)(emphasis added).

The Court finds that the Champion Release, like the release in *Hymel*, *supra*, clearly and unambiguously released Savoie's future claim for mesothelioma (i.e., the survival claims asserted in this action). Not only does it generally release "all claims . . . which we . . . in the future may have against Champion . . . whether heretofore or hereafter accrued or whether known or unknown to the Claimants," it specifically

releases future claims for "cancer or mesothelioma." While the burden was initially on Avondale to show that a future claim for mesothelioma was within the scope of this release, *see Brown*, 630 So. 2d at 747, "[w]here a settlement and release refer expressly to the claim sought to be released by the party seeking to enforce the settlement, that alone is sufficient to shift the burden to the party seeking to oppose the enforcement of the settlement and release to prove that there was no meeting of the minds or that there was fraud or ill practices," *Hymel*, 7 So. 3d at 1257. Plaintiffs have "cited no cases in which a court has invalidated a settlement where the future claim arose out of the original alleged dereliction of duty and was specifically mentioned in the release and the plaintiff was represented by counsel." *Id.* at 1253.

Plaintiffs raise no arguments specific to the Champion Release. However, Plaintiffs have raised several arguments which are applicable to all of the releases, including the Champion Release. Such arguments are discussed below in Part C. For now, however, the Court concludes that the language used in the Champion Release was sufficient to release Savoie's future mesothelioma claim.

2.    Met Life Release

The relevant language in the Met Life Release, dated September 5, 1997, is virtually identical to the language in the Champion Release, including the explicit reference to "cancer or mesothelioma." (*See* Rec. Doc. 280-2 at 11, 13). For the same reasons discussed with the Champion Release, the Court finds that the scope of the Met Life Release included Savoie's future claim for mesothelioma.

Plaintiffs raise one argument that is specific to the Met Life Release. Plaintiffs point out that Metropolitan Life Insurance Company, the released entity, is an insurance company. Plaintiffs contend that under the law of solidary liability an insurer is not assigned a virile share separate from that of its insured. Plaintiffs assert, "To establish Metropolitan Life Insurance Company as a 'settled entity' only begs the question of what entities [Metropolitan Life] was insuring, and whether there were other insurers." (Pls. Opp'n at 14-15, Rec. Doc. 344). Be that as it may, it does not stop the Court from finding that the scope of the Met Life Release included Savoie's mesothelioma claim against Metropolitan Life Insurance Company. The issue here is not whether Avondale will receive a virile-share credit for this or any other release. Avondale will have to prove certain elements at trial before it obtains a credit for the Met Life Release, *see* note 3 and accompanying text, *supra*, and this would seem to include establishing the identity and liability of Metropolitan Life's insured.

3. <u>Amchem Release</u>[5]

In the Amchem Release, dated May 24, 2000, Savoie and his wife released:

> Amchem Products, Inc. [and multiple other entities listed in the margin[6]] from any and all rights, claims, demands . . . of whatever kind or nature which we now have, ***or may have in the future*** for personal

---

[5] Plaintiffs refer to this document as the CCR Release, short for Center for Claims Resolution.

[6] The Amchem Release identifies the following as "Releasees": "Amchem Products, Inc.; Gasket Holdings, Inc. (F/K/A Flexitallic, Inc.); GAF Corporation; Ferodo America, Inc.; Armstrong World Industries, Inc.; The Asbestos Claims Management Corporation (formerly known as National Gypsum Company) and the NGC Asbestos Disease and Property Damage Settlement Trust; CertainTeed Corporation; C.E. Thurston and Sons, Inc.; Dana Corporation; I.U. North America, Inc.; Rhone Poulenc (Tendered To Amc) Maremont Corporation; National Services Industries Inc.; NOSROC Corp.; Pfizer Inc.; Quigley Company, Inc.; Shook & Fletcher Insulation Co.; T & N, plc; Union Carbide Corporation (f/k/a Union Carbide Chemicals & Plastics Company, Inc.); and United States Gypsum Company." (Rec. Doc. 280-2 at 27).

> injuries, disability . . . ***mesothelioma, cancer***, fear of cancer, or any other asbestos-related disease or condition, whether diagnosed or undiagnosed . . . which may be related to, result from or arise out of JOSEPH B. SAVOIE's inhalation or ingestion of, contact with, or exposure to, or use of . . . asbestos-containing products which may have at any time been manufactured . . . by any of the Releasees . . . .

(Rec. Doc. 280-2 at 27) (emphasis added).

As with the Champion Release, the Court finds that the scope of the Amchem Release included Savoie's future claim for mesothelioma.

Plaintiffs raise a few issues that are unique to the Amchem Release. First, the parties disagree over how many entities are purportedly released by the Amchem Agreement—Plaintiffs count nineteen while Avondale counts twenty-one. This issue pertains to how many virile-share credits Avondale may claim with respect to the Amchem Release, which the Court does not consider here. Just as Avondale must prove at trial that a particular releasee is liable for Savoie's mesothelioma in order to receive a virile share credit for that releasee, Plaintiffs may present evidence that multiple releasees should be counted as a single virile share because, for example, they share a common root. *See, e.g.*, *Cole v. Celotex Corp.*, 599 So. 2d 1058, 1073-74.

Plaintiffs also argue that the Amchem Release is controlled by what they refer to as the "Master Agreement," which they claim "makes clear that with regard to those claims which were non-malignant claims at the time of the settlement, there was no intent to release future mesothelioma claims." (Rec. Doc. 344 at 9). Plaintiffs cite to a document entitled "Future Plaintiff Agreement," which is attached to their brief. (Rec. Doc. 344-8 at 30).[7] The Future Plaintiff Agreement states that it applies

---

[7] There is no "Master Agreement" attached to Plaintiffs' brief.

to "the claims of all asbestos personal injury plaintiffs/claimants who, **after the date of this Agreement**, retain [Alwyn H. Luckey, Esquire and Wm. Roberts Wilson, Jr. (individually and as agents for their law firms, Law Offices of Alwyn H. Luckey and Wm. Roberts Wilson, Jr., P.A.)] . . . to file claims in Louisiana alleging personal injury or death arising from the exposure of such plaintiffs/claimants or their decedents [sic] to asbestos-containing materials . . ." (*Id.* at 31) (emphasis added). There is no date on the Future Plaintiff Agreement, but its content suggests it was written years after Savoie retained Wilson to represent him in the *Borden* case. Therefore, the Future Plaintiff Agreement does not appear to apply to Savoie.

Even assuming the Future Plaintiff Agreement did apply to Savoie, that document does not support Plaintiffs' position. Plaintiffs quote the following passage as proof for their contention that Savoie did not release his future claim for mesothelioma:

> Appendix 6 to the Agreement is an agreed-to release form which will be executed by all Plaintiffs alleging a Non-Malignant I condition. That Release shall release all claims **with the exception of** claims that meet the medical documentation requirements in the medical documentation requirements in the **Mesothelioma**, Lung Cancer, or Other Cancer disease categories . . . .

(*Id.* at 52) (emphasis added). Appendix 6 has not been provided to the Court. However, the fact that the Amchem Release expressly includes, rather than excepts, future claims for mesothelioma and cancer strongly suggests that the "Appendix 6" referred to in the Future Plaintiff Agreement is not the release that Savoie signed and therefore has no bearing on this case.

Finally, Plaintiffs raise an argument respecting one of the releasees identified in the Amchem Release, Shook & Fletcher Insulation Company ("Shook & Fletcher"). Plaintiffs point out that there is another settlement document in the record, "the Shook & Fletcher Release" dated May 13, 2002 (i.e., after the Amchem Release), where Savoie and his wife expressly reserved any future claims against Shook & Fletcher for "cancer [or] mesothelioma . . . not diagnosed as of the date hereof." (Rec. Doc. 280-2 at 22-23). Thus, there are two documents in the record that purport to release Shook & Fletcher: one that concerns multiple releasees and explicitly releases future mesothelioma claims, and the one that concerns only Shook & Fletcher and explicitly reserves future mesothelioma claims. The Court finds that the Shook & Fletcher Release is "substantiating evidence of mistaken intent" sufficient to overcome the unequivocal language in the Amchem Release, but only insofar as the Amchem Release purports to release Shook & Fletcher.

In conclusion, the Court holds that the scope of the Amchem Release included Savoie's future mesothelioma claim, except with respect to Shook & Fletcher.

4. <u>Chesterton Release</u>

In the Chesterton Release, dated April 11, 1997, Savoie released:

A.W. Chesterton Company . . . from any and all claims . . . whether presently existing *or arising in the future*, with respect to any and all diseases or injuries, presently existing *or hereafter arising* (*including any asbestos related cancer*), that were caused by or could be associated with exposure to Chesterton's asbestos-containing products and any wrongful death actions . . . and/or any survival actions . . . .

(Rec. Doc. 280-2 at 5) (emphasis added). Unlike the release in *Hymel* and the other releases discussed above, the Chesterton Release does not specifically mention mesothelioma. Despite this omission, the Court finds that the Chesterton Release did release Savoie's future mesothelioma claim.

The central concern in *Brown* was "whether the language employed in the release instrument reflects that the parties clearly comprehended, in light of surrounding circumstances, a release of future . . . claims." *Brown*, 630 So. 2d at 752; *see also id.* at 753 ("[R]eleases of future actions are narrowly construed to assure that the parties fully understand the rights released and the resulting consequences."); *id.* at 744 ("[W]e add a requirement that the release instrument unequivocally reflect, while not necessarily by express reference, that the parties clearly contemplated a compromise of future wrongful death claims."). Although it does not specifically mention mesothelioma, the Chesterton Release does release all future claims "including any asbestos related cancer." Of course, mesothelioma is an "asbestos related cancer." *See Rando v. Anco Insulations Inc.*, 2008-1163 (La. 5/22/09), 16 So. 3d 1065, 1072 & n.1. Furthermore, while the average person would understand the meaning of the word "cancer," it is questionable whether he or she would comprehend a term like "mesothelioma." Thus, the fact that the Chesterton Release does not mention mesothelioma does not distinguish it in a meaningful way from the release in *Hymel* or the Champion, Met Life, and Amchem Releases. The Court finds that the language employed in the Chesterton Release reflects that the parties clearly

comprehended, in light of surrounding circumstances, that Savoie was releasing his future claim for mesothelioma.

5. <u>A. P. Green Release</u>

In the A.P. Green Release, dated January 24, 2001, Savoie released:

> A.P. Green Industries, Inc. . . . from any and all rights, claims, . . . [he] now [has] ***or may have in the future*** for personal injuries (physical or psychological), disability, . . . ***cancer***, fear of cancer, or any other disease or condition . . . which may be related to . . . Worker's inhalation or ingestion of asbestos fibers . . . [or] exposure to . . . other asbestos containing products . . . . Releasors state that they understand that medicine is not an exact science and that Releasors may now have or ***may contract in the future an asbestos . . . related condition which has not been diagnosed***. Releasors state that in consideration of the above payment, they accept the risks of any such current ***and future conditions***, and that it is their intentions to fully release the Parties Released Herein . . . with regard to same.
>
> . . .
>
> This [Release] and the consideration paid herewith is to extinguish all claims for injuries and wrongful death from Releasors' exposure to asbestos . . . including past, present, and ***future injuries***, wrongful death, as well as all personal and ***survival rights***, and is intended and accepted as full and final accord and satisfaction ***should Worker later expire*** as a result of asbestos . . . related disease.

(Rec. Doc. 280-2 at 24) (emphasis added).

The A.P. Green Release releases all future claims and explicitly mentions "cancer," although it does not mention "mesothelioma." The Court finds for essentially the reasons stated above with the Chesterton Release that the scope of the A.P. Green Release included Savoie's future claim for mesothelioma.

6. <u>B & W Release</u>

In the B & W Release, dated December 15, 1990, Savoie released:

> Babcock and Wilcox Company . . . from any and all demands, suits, . . . injuries, . . . [and] claims . . . of every type, kind and character whatsoever, that the undersigned . . . may now or may hereafter have arising out of or in any way related to the exposure of the undersigned . . . to asbestos-containing products . . . .

(Rec. Doc. 280-2 at 42).[8]

Unlike the release in *Hymel* and the other releases addressed above, the B & W Release does not specifically mention a future claim for mesothelioma or cancer. Nor does the B & W Release include language where Savoie acknowledges that he may later develop an asbestos-related disease and that such is included in the release, as occurs in the Champion Release, the Met Life Release, and the A.P. Green Release. On the other hand, the B & W Release does not specifically reserve a future claim for mesothelioma or cancer, as was done in the Shook & Fletcher Release.

The language in the B & W Release is similar to the release considered by the Louisiana Fifth Circuit in *Breaux*, which was held not to include the plaintiff's future mesothelioma claim.[9] The outcome in *Breaux* was also influenced by the low settlement amount, $500. Here the amount is redacted, but the Court will assume it

---

[8] The record contains another release, dated May 20, 1992, that is similar, but not identical, to the B & W Release. (Rec. Doc. 280-2 at 18-19). Because both sides discuss only the 1990 B & W Release, the Court does the same.

[9] The release in *Breaux* is reproduced for the reader's convenience:

> [Plaintiff releases defendant] . . . from any and all claims, demands, damages, actions or suits including any and all claims for medical, hospital or other expenses or personal injuries or disabilities of any nature whatsoever, including but not restricted to, asbestosis, silicosis and/or pneumonoconiosis, past, present or future, and any and all other claims, past, present or future arising out of or in any manner whatsoever connected with or resulting from, either directly or indirectly, injury sustained or occupational diseases contracted while employed at or by [defendant] . . . .

*Brown*, 717 So. 2d at 1257.

was a similarly low number.[10] While not all of the facts align (the plaintiff in *Breaux* did not have an asbestos-related disease at the time he signed the release, whereas Savoie did), the Court finds the B & W Release did not release Savoie's future claim for mesothelioma for essentially the reasons expressed in *Breaux*. The Court denies Avondale's motion for partial summary judgment with respect to the B & W Release.

7.    Combustion Engineering Release

The Combustion Engineering Release, dated February 26, 1999, is almost entirely illegible. For this reason, the Court denies Avondale's motion with respect to the Combustion Engineering Release.

8.    Garlock Release

The language in the Garlock Release, dated May 17, 1996, is somewhat unique compared to the other seven releases. Savoie released:

> Garlock Inc., The Anchor Packing Company, Colt Industries Inc. and Coltec Industries, Inc [the "Garlock and Anchor Entities"] . . . from any and all causes of action, . . . claims and demands of whatever kind or nature . . . which Plaintiff ***now has or has ever had*** against [the Garlock and Anchor Entities] for, upon or by reason or any of the facts alleged by Plaintiff in the [*Borden*] Litigation, whether in contract or in tort, property damages and any other damages, which have accrued ***or may ever accrue*** to Plaintiff or his heirs, executors, . . . successors, or assigns regarding Decedent's exposure to asbestos-containing products distributed by Garlock and Anchor.
>
> . . .
>
> Plaintiff declares that in executing this Release he is releasing the Garlock and Anchor Entities from all claims relating to the Plaintiff's alleged asbestos-related disease including but not limited to claims for

---

[10] The Court makes this assumption because Avondale carries the initial burden as the mover on summary judgment and as the one interposing the release. As discussed in Part C, *infra*, the Court does not make the same assumption for the releases that specifically include mesothelioma and/or cancer, because the express language in those releases shifted the burden to Plaintiffs.

his pleural disease, asbestosis, any type of asbestos-related ***cancer and/or mesothelioma***.

(Rec. Doc. 280-2 at 15, 16) (emphasis added). At first blush, the Garlock Release resembles the Champion, Met Life, and Amchem Releases in that it specifically mentions "cancer and/or mesothelioma." Notwithstanding this language, it is not clear that Savoie released any future claims in the Garlock Release.

In the first paragraph, the emphasized phrase "now has or has ever had" appears to limit the release to present and past diseases. Avondale contends that the second emphasized phrase, "or may ever accrue," modifies "any and all causes of action," bringing future diseases within the scope of the release. However, given the phrase's proximity to "damages" and relative distance from "any and all causes of action," one could reasonably interpret "or may ever accrue" as modifying only "damages," such that Savoie was releasing any future damages that may later accrue as a result of the disease he suffered at that time (e.g., future medical bills Savoie might incur in treating his asbestosis). Notably, interpreting "or may ever accrue" in this manner harmonizes that phrase with "now has or has ever had," whereas Avondale's interpretation places these phrases in tension.

Turning to the second paragraph, it is also phrased in the present and past tense: "Plaintiff . . . is releasing . . . all claims relating to the Plaintiff's alleged asbestos-related disease . . . ." The only asbestos-related disease that Savoie alleged at that time was asbestosis. While the release lists other diseases, including mesothelioma, this is not surprising given that there were numerous plaintiffs in the *Borden* litigation alleging a variety of asbestos-related diseases.

Releases of future actions are narrowly construed. *Brown*, 630 So. 2d at 753. "As a result, if the release leaves any doubt as to whether a particular future action is covered by the compromise, it should be construed not to cover such future action." *Id.* At a minimum, the Garlock Release leaves doubt as to whether Savoie released a future claim for mesothelioma. Accordingly, the Court denies Avondale's motion for partial summary judgment with respect to the Garlock Release.

## C. Plaintiffs' Arguments Against All Releases

As explained above, five of the eight releases included Savoie's future claim for mesothelioma: the Champion Release, Met Life Release, Amchem Release, Chesterton Release, and A.P Green Release. Plaintiffs raised some arguments specific to those releases, which were already discussed. Plaintiffs also raise seven arguments that apply to all of the releases. The Court considers those arguments here.

First, Plaintiffs assert that the releases are inadmissible because they have not been authenticated. Federal Rule of Evidence 901 generally requires the proponent (here, Avondale) to "produce evidence sufficient to support a finding that the items is what the proponent claims it is." Fed. R. Evid. 901(a). Rule 901 also provides examples of how this requirement may be satisfied, including "[t]estimony that an item is what it is claimed to be." Fed. R. Evid. 901(b)(1). Avondale produced an affidavit from Bradley Hiatt, an attorney with the firm that represented Savoie in the *Borden* case, who certified that the releases were true and correct copies of documents produced in response to Avondale's subpoena requesting "[a]ny and all

documents concerning or reflecting settlements, compromises and agreements to settle or compromise any claims asserted by Joseph B. Savoie, Jr. . . . in connection with Mr. Savoie's alleged asbestos related illness or any occupational diseases . . . ." (Rec. Doc. 280-2 at 1-2). Mr. Hiatt further testified:

> We searched through the [firm's] records as they are kept in the normal course of business over a stretch of three days. After that exhaustive search, these are the documents that were found that were kept in the regular course of business. These are the documents specifically found in Mr. Joseph Savoie's file.

(Rec. Doc. 478-2 at 9, Depo. Tr. p. 35); (*See also* Rec. Doc. 478-2 at 3, Depo. Tr. p. 11-12). Savoie's wife testified during her deposition that the signatures on the release documents belong to her husband and herself. (*See, e.g.*, Rec. Doc.478-1 at 28). The documents have been authenticated.

Second, Plaintiffs point out that all of the documents submitted by Avondale pre-date Savoie's diagnosis of mesothelioma by many years. Plaintiffs further urge that a cause of action for mesothelioma is separate from a cause of action for asbestosis. Be that as it may, the Louisiana Supreme Court has made clear that a party may release a future claim. *See Brown*, 630 So. 2d at 744.

Third, Plaintiffs argue that the releases were not signed by any of Savoie's children. While this might be relevant to the children's wrongful death claims, the Court has dismissed those claims with respect to Avondale (*See* Rec. Doc. 484); only survival claims are at issue here.[11] Unlike a wrongful death action, which compensates the decedent's beneficiaries for their injuries that result from the

---

[11] Furthermore, the parties appear to agree that comparative fault, not solidary liability, would apply to the wrongful death claim.

victim's death, a survival action is based upon the victim's right to recover for his own injuries being transferred to the beneficiary upon the victim's death. *Walls v. Am. Optical Corp.*, 98-0455 (La. 9/8/99), 740 So. 2d 1262, 1273-74. If Savoie released his mesothelioma claim, that claim could not transfer to his children upon Savoie's death. Therefore, the fact that his children did not sign the release is irrelevant to the survival claims.

Fourth, Plaintiffs argue that Avondale has produced no evidence that Savoie was actually compensated for signing any of the releases, and therefore no valid settlement or compromise exists. Plaintiffs indirectly quote[12] *Bielkiewicz v. Rudisill*, 201 So. 2d 136, 141 (La. 3d Cir. 1967), which stated, "A unilateral 'release', whereby without any shown consideration one party recieves nothing in exchange for the release of his claim, simply does not meet the legal requirements of a valid compromise which is res judicata between the parties." However, the release in *Bielkiewicz* did not state on its face, nor was it proved by other evidence, that any consideration was exchanged for the release. *Id.* at 140. This was key to the court's decision that no compromise existed, implying that if the release had stated that consideration was exchanged, the compromise would have been upheld. *See id.* at 141 ("We therefore conclude that the exception of res judicata must be overruled, because the unilateral 'release' executed herein by each plaintiff ***without shown or proved consideration*** does not constitute a binding bilateral compromise which may be the basis of res judicata." (emphasis added)). Here, all of the releases except one state

_____

[12] Plaintiffs quote from *Williams v. Winn Dixie*, 447 So. 2d 8, 10 (La. 4th Cir. 1984), but *Williams* was quoting *Bielkiewicz*.

that at the time Savoie signed, he did so "for sums paid," for "cash in hand paid," for amounts "the receipt . . . of which are hereby acknowledged," or for amounts "this day received."[13] Under *Bielkiewicz*'s reasoning, then, the compromises are enforceable.

Furthermore, while Avondale bears the initial burden of proving the requisites for a valid compromise, *see Brown*, 630 So. 2d at 747, Savoie's acknowledgment in the release that compensation was paid shifted the burden to the Plaintiffs to show that there is at least a genuine dispute as to whether compensation was paid. *Cf. Hymel*, 7 So. 3d 1256-57 (when a settlement expressly releases the claim at issue, the burden shifts to the opposing party to show the parties did not intent to settle that claim). Plaintiffs fail to meet this burden. Plaintiffs cite to the deposition of Lawrence Fitzpatrick, an employee of the Center for Claims Resolution, which negotiated the Amchem Release. Mr. Fitzpatrick testified that seven of the nineteen entities listed in the Amchem Release entered bankruptcy around September 2002, which caused a settlement with Clemcy Legendre to be mostly unfunded. (Rec. Doc. 344-8 at 18-20, Depo. Tr. pp. 67-76). But this testimony concerns events that took place two years after Savoie signed the Amchem Release, and Fitzpatrick never mentions Savoie or any of his settlements. Plaintiffs produce no evidence showing that Savoie did not receive consideration for signing any of the releases. Because it was Plaintiffs' burden to do so, their fourth argument fails.

Fifth, Plaintiffs argue that none of the releases were signed by any of the entities purportedly released by those instruments. As a general rule, Louisiana law

---

[13] The Garlock Release is the outlier. As discussed above, however, the scope of that release did not include Savoie's future mesothelioma claim. Thus, the Garlock Release is no longer at issue.

requires that settlement agreements be reduced to writing and signed by both parties. *See Felder v. Georgia Pac. Co.*, 405 So. 2d 521, 523 (La. 1981). There are exceptions to this rule, however. *See, e.g.*, *id.* at 524 (signatures need not appear on the same document). In *Brown*, the Louisiana Supreme Court stated that "a release of a claim executed in exchange for consideration received is, in effect, a compromise which can form the basis for a plea of res judicata." 630 So. 2d at 747 n.5; *accord Bielkiewicz*, 201 So. 2d at 140-141 (indicating that a release signed only by the plaintiff would have been enforceable had it stated on its face or there was evidence showing that consideration was exchanged). As just explained, all of the releases except one state on their face that Savoie received consideration in exchange for the release, and Plaintiffs have produced no evidence to contradict this. Accordingly, Plaintiff's fifth argument is rejected.

Sixth, Plaintiffs complain about the fact that the settlement amounts in the releases are redacted. Plaintiffs contend the amount is critical, as the court in *Breaux* viewed a $500 settlement as a nuisance settlement that did not release a future mesothelioma claim, while *Hymel* concluded a $15,000 settlement did release a future mesothelioma claim. Plaintiffs give too much weight this distinction. The primary difference between *Breaux* and *Hymel* is the specificity of the release language, not the settlement amount. The very first point *Hymel* makes when discussing *Breaux* is that the release in *Breaux* "does not use the words 'cancer' or mesothelioma,'" whereas the release before it "specifically covered both mesothelioma and cancer by name." *Hymel*, 7 So. 3d at 1254 (emphasis omitted). *Hymel* then discusses ad nauseam the

significance of using specific language in the release.[14] In contrast, *Hymel* mentions settlement amount third among the facts distinguishing it from *Breaux* and suggests that settlement amount has little, if any, relevance when the release specifically discharges the claim at issue.[15]

This interpretation is further supported by *Hebert v. Avondale Industries, Inc.*, No. 13-0518 (La. App. 4 Cir. 5/1/13), an unpublished opinion from the Louisiana Fourth Circuit.[16] Like *Hymel*, *Hebert* held that the plaintiff's settlement stemming from his asbestosis lawsuit released his future claim for mesothelioma, even though the plaintiff did not develop mesothelioma until nearly ten years after executing the release. The majority opinion reasoned:

> [T]he settlement specifically covers both mesothelioma and cancer; Mr. Hebert had an asbestos related disease at the time he signed the settlement (asbestosis). He has the potential to recover additional sums

---

[14] *See id.* at 1257 ("Where a settlement and release ***refer expressly to the claim*** sought to be released by the party seeking to enforce the settlement, ***that alone*** is sufficient to shift the burden to the party seeking to oppose [its] enforcement . . . to prove that there was no meeting of the minds or that there was fraud or ill practices."); *id.* at 1253 ("The plaintiff has cited no cases in which a court has invalidated a settlement where the future claim arose out of the original alleged dereliction of duty ***and was specifically mentioned in the release*** and the plaintiff was represented by counsel."); *id.* at 1256 ("In the instant case, the written agreement ***expressly includes mesothelioma***. Therefore, . . . the burden shifts to the [plaintiff] to show that the parties did not intend to settle the mesothelioma claim."); *id.* at 1256 ("The fact that ***mesothelioma was specifically mentioned*** in the release now before this court distinguishes it from the release [considered by the Louisiana Supreme Court] in *Brown*, ***a distinction which the Brown court indicated was determinative*** . . . ."); *id.* at 1255-56 ("Personal injury claims would be impossible to settle were this Court to hold that, as a matter of law, every new post settlement symptom would give rise to a new claim regardless of the ***express language of the settlement to the contrary***.") (emphasis added).

[15] *See id.* at 1254 ("Therefore, he is not in a position to argue that he traded away his whole claim for mesothelioma for $15,000.00, ***although it would not have made any difference had he done so as long as the record shows that he did so, as it does***."); *id.* at 1256 ("A compromise may not be rescinded for lesion, i.e., a compromise may not be rescinded because it is later determined that the bargain struck was a poor one. . . . Therefore, the implication in plaintiff's argument that the $15,000.00 settlement for what eventuated into mesothelioma was not legally sufficient is not persuasive."); *id.* at 1253 ("When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. . . . . ***It is not the province of the courts to relieve a party of a bad bargain, no matter how harsh***.") (emphasis added).

[16] A copy of the opinion can be found in the record at Rec. Doc. 161-4 at 18-27.

from other defendants in the present suit. Mr. Hebert entered into the agreement willingly and with the advice of counsel. Thus, we find that the claims now asserted . . . are waived . . . .

*Id.* at 5 (paragraph break omitted). Conspicuously absent from this analysis is any reference to the settlement amount. In fact, the *Hebert* majority deemed the settlement amount of $1,500.00—which it conceded was a "low number"—to be "immaterial" to its decision. *Id.* at 3 & n.1.

Similar to the releases in both *Hymel* and *Hebert*, the Champion Release, Met Life Release, Amchem Release, Chesterton Release, and A.P. Green Release specifically released future claims for mesothelioma or cancer or both. Also, Savoie had an asbestos related disease when he signed the releases, was represented by counsel when he signed the releases, and has the potential to recover additional sums from other defendants in the present suit. Given these circumstances, it seems highly unlikely that the settlement amounts, whatever they may be, would qualify as substantiating evidence of mistaken intent. In any event, if Plaintiffs believe the settlement amount would make a difference to the outcome, the burden is now on them to show what those amounts were. *See supra* discussion re: Plaintiffs' fourth argument. This is particularly so given that the Plaintiffs—Savoie's wife and children—are in a better position than Avondale to know what amounts were in the releases Savoie signed.

Plaintiff's seventh and final argument is that Savoie never intended to settle his future mesothelioma claim. Plaintiffs cite deposition testimony from Savoie's wife who states that she and her husband never intended to give up any rights relating to

mesothelioma, that she had never heard of mesothelioma until her husband was diagnosed with that disease in 2014, that no one explained the releases to them, that the attorneys who represented them in the *Borden* case did not have authority to act on their behalf regarding mesothelioma, etc., etc. Under the circumstances, this evidence is not enough to avoid summary judgment. *See Hymel*, 7 So. 3d at 1257 ("Where a settlement and release refer expressly to the claim sought to be released by the party seeking to enforce the settlement, that alone is sufficient to shift the burden to the party seeking to oppose the enforcement of the settlement and release to prove that there was no meeting of the minds or that there was fraud or ill practices. It is not sufficient to raise the issue to merely make the self-serving allegation that there was no meeting of the minds. A party represented by counsel may not defeat a written settlement and release that is unambiguous on its face by merely alleging that he did not understand it. Otherwise, no settlement would be enforceable without more litigation which defeats the whole public policy favoring settlements. Signatures on documents are not mere ornaments. . . . There is little incentive to settle if a party to the settlement agreement may later seek to void it based merely on his self-serving statements, without more, and in the absence of any evidence of fraud or ill practices, that he misunderstood what he signed or that he did not intend to sign what he signed."). Plaintiffs' seventh argument fails.

## CONCLUSION

There is no genuine dispute as to a material fact that Savoie released his mesothelioma claim in the Champion Release, Met Life Release, Amchem Release,

Chesterton Release, and A.P Green Release. However, the B & W Release, Combustion Engineering Release, and the Garlock Release did not release Savoie's mesothelioma claim.

Avondale is only entitled to a virile share credit if it can prove at trial that an entity released by the Champion, Met Life, Amchem,[17] Chesterton, or A.P. Green Releases is liable for Savoie's mesothelioma. *See* note 3 and accompanying text, *supra*. Accordingly, Avondale's motion requests that all of the entities released by the settlements be placed on the jury verdict form. The Court will determine which entities will be on the verdict form after hearing the evidence at trial. If, for example, Avondale presents no evidence that a particular releasee is liable, the Court will not put that entity on the verdict form.

For these reasons,

IT IS ORDERED that Avondale's Renewed Motion for Partial Summary Judgment to Establish the Settlements of Certain Non-Parties (Rec. Doc. 280) is GRANTED IN PART and DENIED IN PART.

New Orleans, Louisiana, this 10th day of June, 2019.

_____
United States District Judge

---

[17] Although Shook & Fletcher is listed as one of the releasees in the Amchem Release, Savoie did not release his mesothelioma claim against that entity. *See* Part B.3 of the Discussion, *supra*. Under no circumstances, then, can Avondale receive a virile-share credit for Shook & Fletcher.